ROBERT WAITE, Trustee, Appellant, v. CITIZENS STATE BANK, Appellee.

BANKRUPTCY: Preferences Voidable—Knowledge of Transferee —Evidence. It is not enough that the creditor has some reason to *suspect* the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable *belief* of his debtor's insolvency in order to invalidate, as an unlawful preference, a payment of the debt. Evidence reviewed, and held insufficient to show such knowledge.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

WEDNESDAY, JANUARY 17, 1917.

This is an action at law, brought by the trustee of the bankrupt estate of John W. Garrett to recover money paid on default judgment against Garrett within four months preceding the filing of the petition in bankruptcy. There was a trial to a jury, and, at the close of the testimony, the trial court directed a verdict for the defendant, and rendered judgment against plaintiff for costs. Plaintiff appeals.— *Affirmed.*

*Barnes, Chamberlain & Randall,* for appellant.

*Remley & Remley,* for appellee.

PRESTON, J.—It is alleged that the defendant herein obtained a judgment against Garrett on September 15, 1914, for $141. On December 29, 1914, and within four months preceding that date, that is, on September 17, 1914, there was paid to the said bank on said judgment the sum of $115.14. An attachment was issued in the suit by the bank against Garrett, and different parties were garnisheed on Garrett's threshing accounts. These parties paid their money to the clerk of the district court, which was applied on the judgment as aforesaid. Nothing further was done until about December 29, 1914, when execution was issued for the small balance due on the judgment, and the execution was placed in the hands of the sheriff. Garrett was notified about the execution and immediately filed his petition in bankruptcy. On March 19, 1915, this suit was brought against defendant, the plaintiff claiming that the said payment on the judgment resulted in an unlawful preference; that, at the time the said bankrupt suffered the said judgment to be taken, he was insolvent, and the defendant bank then had reasonable cause to believe that the enforcement of such judgment would effect a preference. The defendant bank in this case admitted that it received the said sum of $115.14 on the judgment, but denied any unlawful preference.

BANKRUPTCY: preferences voidable: knowledge of transferee: evidence.

The motion to direct a verdict was on the following grounds:

First. That the evidence failed to show that the bankrupt permitted or suffered a judgment to be entered against him, but that the evidence shows it was against his wish, and that it was necessary to show that the bankrupt permitted or suffered a judgment against him, intending thereby to create a preference.

Second. That there are no facts shown that would influence a reasonably prudent man to believe that the bankrupt was in fact insolvent when the money was paid on the judgment, and that the evidence is not sufficient to cause the bank reasonable ground for believing that Garrett was insolvent.

Third. That the evidence shows that another bank paid checks issued on said bank by the bankrupt, which showing is sufficient to show that Garrett was not in fact a bankrupt.

Fourth. That upon the whole record there is not sufficient evidence to sustain a verdict in favor of the plaintiff, should the jury return such a verdict.

The motion was sustained generally. The errors assigned relate to the ruling on the motion to direct a verdict, and in regard to the admission of testimony. Appellee contends that the errors assigned are not all argued. However this may be, the argument is directed principally to the question as to whether the creditor, the bank, had reasonable ground to believe that the debtor was insolvent, appellant contending that there was such evidence, and sufficient to take the case to the jury. As we understand counsel, when the matter is boiled down, this is really their only contention; for they say in argument that there was but one question to submit to the jury, and that was whether or not there was reasonable cause for the creditor to believe the debtor was insolvent; and they state that there can be no dispute that Garrett suffered a judgment to be rendered against him, and that the actual intent of the debtor was immaterial.

This being so, we shall direct our attention to this one question. We may say, however, that it is doubtful whether it was shown that the bankrupt was insolvent at the time the judgment was entered and the attached property applied on the judgment. We think the evidence fails to show that the bank knew that the bankrupt was insolvent, if he was. The bankruptcy statute provides:

"A person, shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 30 Stat. at L. 544, Ch. 541.

And it is held that the fact that a debtor is adjudged a voluntary bankrupt does not raise a presumption of insolvency prior to the filing of the petition. Collier's Bankruptcy (10th Ed.), page 791.

The facts, stated as briefly as may be, on this point, are: That Garrett, the bankrupt, lived upon a rented farm of 200 acres, and in the fall of 1914 had 80 acres of good corn, worth $1,600, 12 acres of oats, 15 tons of hay, worth $150, besides 7 head of horses, a complete threshing outfit, farm machinery, and some stock. He gave the note upon which judgment was rendered, in March, 1913. The evidence shows that Mr. Falcon, the president of defendant bank, went to see the Martelle bank, and learned that they had a bill of sale on Garrett's property as security, and that that bank held $600 worth of property over and above enough to pay its own claim and the rent. The Martelle bank wanted Mr. Falcon to leave his note, and they would collect it. The cashier of the defendant bank did not know of any other debts than what was due the bank, and the rent. But, however this may be, and without determining that point, we think the trial court properly directed the verdict on the one question which appellant concedes is the principal one in the case, and that

is, whether there was sufficient evidence to take the case to the jury on that question,—that is, as to whether the defendant bank at the time in question had reasonable cause to believe the bankrupt was insolvent.

The evidence on this point, in addition to that already set out, is, in substance: As stated, the note upon which judgment was entered was given in March, 1913, and was due in 90 days. The note was not renewed, and was not paid when due. The bankrupt had borrowed money of the defendant bank at other times, but the $125 loan in question was the last, and he had no business transactions with that bank afterwards. The cashier of defendant bank had known Garrett for 15 years. When the note became due, he notified Garrett, and saw him again about it in the fall. The next time he saw Garrett was about the first of August, 1914, when Garrett was threshing. At this time, Garrett promised payment the next week, and said he was making from $25 to $30 a day threshing. On August 25, 1914, the cashier saw the bankrupt at work on the farm, and Garrett said he had made arrangements with the Martelle bank to get the money, and would pay it the first of the next week, and was told that this would be satisfactory. The cashier asked Garrett about the threshing accounts from which he had promised about August first to make payment, but Garrett said these accounts had been turned over to the sheriff, which statement was not true. The only evidence introduced on this question by plaintiff was from one witness, the bankrupt himself, who testified substantially as before set out, and, in addition thereto, he said that the cashier demanded his money, and that Garrett told him that he could not give it to him; that he didn't have it; and again told him that he could not pay the note because he had lost his hogs; that a justice of the peace also made demand for the payment of the note; that he also told the cashier that he could not pay any of the men he owed unless they waited for it. He says that the total amount of his indebtedness was $4,400 or $4,500, but that he could not say

the worth of his property that he had at that time; that the cashier told him he had a way of getting it, and that he was going to have it. On cross-examination, Mr. Garrett testified that he told the cashier that he would make an arrangement with the Martelle bank to pay if he could; that he had told the cashier that he had spoken to Mr. Brown, the cashier of the Martelle bank, but had made no definite arrangement; that he had given checks on the Martelle bank since he filed his petition in bankruptcy.

The cashier testified, among other things, in addition to some of the facts before set out, that he never knew Mr. Garrett was insolvent and did not know he had more debts than he had property, and on cross-examination, he said that he had made no endeavor to collect this note between December, 1913, and August, 1914; that he just let it lie without making any effort; that he made an investigation as to what Garrett had; that he did not know what his assets and liabilities were on August 25th; that the cashier of the Martelle bank told him that they had a bill of sale for $600 worth of property more than enough to secure his bank and the rent; that he did not find there were other debts that he owed besides these; that he was led to think that Garrett had more than enough property to pay his debts; that the cashier of the Martelle bank told him that, with the amount of property that he expected to turn back to Garrett, he could put Garrett on his feet so that he could carry on his business the same as he had been; that Garrett told him, about August 1, 1914, that he was making $25 to $30 a day threshing. This statement, however, is denied by Garrett. The cashier testifies further that there never was a time when he did not think the note was good and could be collected. He testifies further that he made other investigation and inquiries about August 25th in regard to Garrett's property from the farmers who had threshed, and says that, after he had collected the $115 on the judgment, he still believed the balance was good and could be collected. There is no evidence that the

president of defendant bank knew that Garrett owed any debt except what was due the Martelle bank, the rent, and the $125 note to the defendant bank. Mr. Garrett did not tell him about any debts, and, as stated, the Martelle bank informed him that they had a bill of sale for $600 worth of property more than enough to secure them and pay the rent. The farmers informed Mr. Falcon that they owed for threshing. Garrett was running a 200-acre farm, with crops, machinery, horses and stock.

There may be some other circumstances, but this is the substance of the testimony on this point, and we think, after reading the record, that the evidence at this point sustains the ruling of the trial court.

The opinion of the court in *Burnham v. Fort Dodge Grocery Co.*, 144 Iowa 577, at 580, quotes from a decision of the Supreme Court of the United States in part as follows:

"Some confusion exists in the cases as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' Dicta are not wanting which assume that it has the same effect as if it had read 'having reasonable cause to *suspect* such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that the creditor has some reason to suspect the insolvency of his debtor, but he must have such a knowledge of the facts as to induce a reasonable belief of his debtor's insolvency in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have ground of suspicion that his debtor is in failing circumstances, and yet have no cause for well grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it; and yet such a belief as the act requires may be wanting. Obtaining additional security or receiving payment under such circum-

stances is not prohibited by law. . . . Hence, the act very wisely, as we think, instead of making a payment or security void for a mere suspicion of the debtor's insolvency, requires for that purpose that his creditor should have some reasonable cause to believe him insolvent. He must have knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily prudent man."

Without further discussing the testimony, we are of opinion that the judgment of the district court was right, and it is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and EVANS, JJ., concur.