## KENNARD v. BEHRER et al.

(District Court, S. D. New York. October 18, 1920.)

Bankruptcy ⚙⇒166(4)—Security given not voidable, creditor not having reasonable cause to believe that transfer would be preference.

The taking of security by a creditor, when it was known to both that the debtor was then insolvent in the sense of the Bankruptcy Act (Comp. St. §§ 9585–9656), but in the honest belief and with a reasonable prospect that some of his assets, worthless for the moment, would, if he were allowed to continue his business, realize enough to pay his debts in full, *held* not the giving or taking of a preference, voidable under Bankruptcy Act, § 60 (Comp. St. § 9644); the creditor not having reasonable cause to believe that the transfer would effect a preference.

In Equity. Suit by Johnson Hanson Kennard, trustee in bankruptcy of E. Pierrepont Rowland, against Arnold Behrer and others, doing business under the firm name of Arnold Behrer & Sons, and the Walworth Manufacturing Company. Decree for defendants.

This is a bill in equity under section 60 of the Bankruptcy Act (Comp. St. § 9644), by a trustee in bankruptcy, to set aside an assignment given to two creditors as a voidable preference. The bankrupt was an officer of a corporation known as the H. B. Stephenson Company, doing a plumbing business in the city of New York. This corporation becoming pressed for money in the winter of 1916–1917, and being unable to meet its obligations, gave a number of notes to its creditors generally, indorsed by the bankrupt, until by the spring of 1917 he had so become liable to the extent of over $18,000. Both defendant creditors were dealers in jobbers' supplies in the city of New York and sold largely to the Stephenson Company upon credit. One of them, Behrer & Sons, had had such an account with the company for some years, and in October or November, 1916, becoming somewhat concerned about its payment, a member of the firm began pressing the company. Finally, in March, after failing to get any satisfactory adjustment, he placed the case in the hands of his attorney. The other defendant creditor, the Walworth Company, had opened its account with the Stephenson Company in the year 1916, and took the first note in November of that year. It, too, became concerned over the account in January, 1917, and likewise put the matter in the hands of its attorney.

The bankrupt and other officers of the Stephenson Company met the defendants twice in the office of the attorney of Behrer & Sons on April 10 and 12, 1917, and the bankrupt executed the assignment in question, after an agree

---

⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment the substance of which appears in the opinion. Under the will of the bankrupt's father, he became entitled to an estate in remainder in real property situated in the city of New York, contingent upon his survivorship of his mother, the life tenant, who was then living. He conveyed this interest to the two creditors as security for the amount then due to them—$10,400 to Behrer & Sons, and about $3,000 to the Walworth Manufacturing Company. These claims were each split into 60 parts, and 60 notes given, payable at intervals of one month, and indorsed by the bankrupt and two other officers of the Stephenson Company. It was disputed on the trial whether the consideration for the transfer was any extension of the claims, and especially whether the creditors had waived their undoubted right to file mechanics' liens. The value of the remainder in fee at the death of the mother was $17,000, but upon established actuarial calculation its actual value, living the mother, was about $5,400.

Charles C. Pearce, of New York City, for trustee.

Milton M. Leichter, of New York City, for Behrer & Sons.

Bartholomew Foody, of New York City, for Walworth Co.

LEARNED HAND, District Judge (after stating the facts as above). It is quite clear that both Rowland, the bankrupt, and the Stephenson Company, were insolvent on April 12th, the day of the assignment, unless the unperformed plumbing contracts of the company be taken as having a very substantial value. On January 1, 1917, and on March 1, 1917, Greenfield's report shows that the company was insolvent in the sum. of $20,000, and in July, upon their bankruptcy, their condition was worse. Stephenson's testimony, as well as Brandon's and Rowland's, touching the condition of the business after April 12th, precludes the supposition that their position had been bettered on April 12th, and it would be casuistical to indulge in any scruples as to the sufficiency of the proof.

Similarly, too, of Rowland's condition. His interest now in suit had then a present value of about $5,400, out of which he must pay some $1,000 of personal debts. The remaining $4,400 was all he had to pay the deficiency upon at least $18,000 of indorsements; his schedules, indeed, show about $25,000. Now, the debts of the Stephenson company were about $43,000, and their assets $23,000, not much over 50 per cent. of the debts. Certainly Rowland had no resources to pay any such deficiency.

The value of the uncompleted contracts is not in proof; probably "at a fair valuation," as the statute provides, they were worth nothing in exchange, and, if so, insolvency was established. As I view the case, it is, however, unnecessary to determine whether the trustee should have shown that fact, or whether I could assume so much from the mere character of the property itself. I should be much tempted to do so. The point upon which the case in my judgment turns against the trustee is that he has not shown that the defendants had reasonable cause to believe that the transfer would effect a preference, assuming that the contracts had no such value.

In discussing this point I shall assume that, even though the defendants did not know the company's financial condition, or Rowland's either, they are charged as much with knowledge as though they had. As to the. company, I cannot doubt that this is true. They were certainly discussing, and I think proposing, to file mechanics' liens upon

the contracts, they had vainly been endeavoring to make some satisfactory adjustments of the notes, and they had put the accounts in the hands of their lawyers to force some payment. Weisburger had received summonses and complaints, which he must have known to be sure to result in judgments, the notes were in large part, if not altogether, overdue, and the scarcity of ready cash was well known to Clarence Behrer. Moreover, they had insisted upon some statement of the resources of the company, obviously because they feared its solvency and its possible suspension. Before taking security, in such a posture of their debtor's affairs, I think they were bound to require an actual examination of its books, which would have disclosed what we now know from the Greenfield report; that is, that upon any present liquidation the company was wholly insolvent.

Moreover, such an examination would have disclosed Rowland's indorsements, and with them his own insolvent condition. I cannot suppose that, whatever his protestations, it would have required more than a moderate insistence to compel a disclosure of his actual assets. The creditors were in a position to compel the most detailed disclosures. Yet, while all this would have shown, as I have said, a very substantial insolvency, if the contracts were disregarded, it would nevertheless leave the creditors as much in doubt as we are now as to the value of the unfinished contracts. And even assuming that these must be wholly disregarded in appraising the assets under the statute, they were a legitimate factor in the defendants' determination whether the assignment would effect a preference. That, they knew, would depend upon whether, if they were content not to press the company into immediate insolvency, it would be able eventually to emerge from its difficulties.

Now there seems to me no question that every one who attended the meetings of April 10th and 12th honestly believed that there was a good chance for this to happen. Branden specifically says that this was true, and that, had the company's credit been continued, it would have come through successfully. All the rest, except Rowland, swear that this was the expectation of the meeting, and the form of the adjustment, assuming it was made in good faith, bears out their story. The 60 notes, one month apart, could have been meant for no other purpose than to suspend any coercive action if they were regularly paid, and the defendants certainly intended to hold off their liens, even though they did not bind themselves to do so.

The question in the case may be therefore stated thus: The creditor knows the debtor to be for the moment insolvent in the sense of the statute, yet he honestly supposes that some of his assets, worthless for the moment, will, if he be allowed to continue, realize enough to pay his debts in full. May he safely take security under such circumstances? I think that he may. Of course, it is true that he is protecting himself against the possibility of the debtor's insolvency, and that he does this only in order that the transfer may in that event "effect a preference." If the statute uses "would" as an equivalent of "might," that preference, when it comes, will be voidable. If it is, a creditor can never successfully take security for an existing debt. Taking security of itself is a provision against the debtor's possible

insolvency, and an assurance that the creditor shall get more than his fellows in that event. The statute does not forbid this. Grant v. Nat. Bank, 97 U. S. 81, 24 L. Ed. 971. It recognizes that a creditor may be uncertain enough of his claim to be unwilling any longer to leave it at risk. It allows him, by taking security, to do that which, if his fears be realized, will prove to the prejudice of his fellows. It permits this because its policy is not to compel creditors to overturn all shaken debtors while they have an honest hope of regaining a firm foundation. That creditor only the statute proscribes who dips his hand in a pot which he knows will not go round. Hence it follows that, while there is an honest chance of continued life, he need not quench it at his own peril. The only test is the honesty of his purpose. Nor is it an answer here to argue with the plaintiff that the defendants' unwillingness to advance more money is a proof of bad faith. It was precisely because they were too doubtful of their debtor's position to leave their money longer unsecured that they required the security. Their fears forbade any further advances, but do not contradict the truth of their belief that the company might pull through. I think the test should be whether the chance was one whose success good judgment would forecast; it need not be a business certainty; it must not be a gambler's cast. There can be no fair doubt that such was the actual situation in the case at bar. A contractor's business is in any case one of feast or famine, in which that might be no more than an exhilarating episode which to a bank, for example, would be a despairing gasp. It is true that the situation, as Greenfield's statement showed it, looked ominous; but the concurrence of all those who knew ought to be an answer to the present suggestion that it was beyond salvation. In fact, the company had no difficulty in getting all the supplies it needed, though they were furnished on the credit of the owners. Stephenson knew that part of its affairs better than Branden, and his testimony must be preferred.

The act of March 2, 1867 (14 Stat. 534, § 35), was differently worded; it made the test reasonable cause to believe the bankrupt insolvent. The present act, up to 1910, made the test reasonable cause to believe that the bankrupt intended to effect a preference. Under this statute it was decided that the bankrupt's knowledge that he was insolvent was not equivalent to an intent to create a preference. Re First National Bank of Louisville, 155 Fed. 100, 84 C. C. A. 16 (C. C. A. 6th); Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960 (C. C. A. 5th); Kimmerle v. Farr, 189 Fed. 295, 111 C. C. A. 27 (C. C. A. 6th). It was recognized that in spite of the fact of insolvency the bankrupt might honestly suppose that he could in the end pay them all, and indeed that the creditor might share his belief. Now that the statute is changed, and intent to prefer gives place to belief that a preference will result, the rule is the same. If the bankrupt's honest judgment that he could pay in full protected the creditor then, the creditor's honest judgment to the same effect will protect him now. The change from the act of 1867 was certainly with a purpose which can be fulfilled only if the distinction which I mention is observed.

Bill dismissed, but without costs.