## In re INTERNATIONAL WOODENWARE CO.

District Court, E. D. Pennsylvania. January 9, 1928.

### No. 8922.

1. **Bankruptcy** ⬅➔310—**Creditor, who made additional loan to bankrupt on pledge for that and antecedent debt, held entitled to prove secured claim to extent of present advance; "present consideration."**

A creditor, who lent bankrupt an additional $500 on the security of bonds pledged for that and antecedent debt, *held* to have given a "present consideration" for the pledge to the extent of the $500, and entitled to prove that amount as a secured claim.

2. **Bankruptcy** ⬅➔311(1)—**Creditor cannot prove secured claim based on transfer which is a preference (Bankr. Act, § 60a [11 USCA § 96]).**

A creditor cannot establish as a secured claim one based on a transfer by bankrupt which is a preference, as defined by Bankruptcy Act, § 60a (11 USCA § 96).

In Bankruptcy. In the matter of the International Woodenware Company, bankrupt. On review of orders of referee. One order reversed, and one confirmed.

Israel K. Levy, of Philadelphia, Pa., for petitioners.

Jay B. Leopold, of Philadelphia, Pa., for general creditors.

DICKINSON, District Judge. There are two orders under review, which may be discussed as one.

### Rulings of the Referee.

The claimants offered proofs of their respective claims as secured claims, all of which were rejected by the Referee as such.

### Conclusions.

The conclusions reached are:

(1) The Friedberg claim of $500 should be allowed as a secured claim.

(2) The other claims were properly disallowed as "secured claims."

### Discussion.

The industry displayed by counsel in the fullness and thoroughness of the arguments submitted calls for a fuller discussion of the question raised than would be otherwise justified. It is a cause for surprise that the answers to these questions should be deemed to

be debatable at this late day. This circumstance is largely due to the fact that the Bankruptcy Law (11 USCA), in dealing with the same subject-matter, makes use of a different verbiage, not only to express a differing thought, but also in giving expression to what would seem to be the same thought. The general subject of unlawful preferences embraces two classes of transactions. One deals with those which under the state laws are void or voidable, and which are likewise so under the Bankruptcy Law; the other deals with those which would be upheld at common law, or by the state law, but which are declared void or voidable by the Bankruptcy Law only because against the policy adopted by it. The instant case belongs wholly to the latter class. When interpreting laws which enforce a policy, it is especially helpful to look for aid to that time-worn guidebook of "the old law, the mischief and the remedy." In the absence of a Bankruptcy Law, a failing debtor, by a cash payment, transfer, or pledge of property, judgment, execution, or other lien or form of preferment, often saved a favored creditor at the expense of others equally worthy. This was thought to be an evil which the Bankruptcy Law sought to meet by the adoption of the policy that the assets of insolvent debtors should be shared ratably by all his creditors.

The line between solvency and insolvency is not, however, a sharply defined one. Between the territory of the one and the other there is an overlapping zone of financial strain and stress which may become either. If all transactions with a debtor were at the risk of his being at the time insolvent, many would be forced into bankruptcy who might otherwise be saved. A line was accordingly drawn (1) at the four-months time limit; (2) the then insolvency of the debtor; and (3) what would seem to be the same thing as insolvency, the variously worded condition that a preference must have been intended, or the carrying out of the transaction would so operate, or the effect or consequence of what had been done had been to work a preference. An exception was made of transactions which were for a "then present consideration," and under certain conditions in favor of creditors who had no knowledge of the insolvency of the debtor with whom they were dealing. The act deals separately with transactions voidable outside of bankruptcy, with liens acquired by judgments, executions, or legal process of any kind, and with transfers of property (including pledges) made by the debtor. This discussion is limited to transfers and pledges. Creditors who had thus had transactions within the four-months period with a debtor who was insolvent were divided into four classes, stated in a different order as follows:

(1) Those who dealt for a "then present consideration."

(2) Those (exclusive of class 4, infra) who received in consideration of an antecedent debt something from the debtor, the result or consequence of which was to favor them over other creditors, but which was received in such way as that, in order to avoid the preference, the trustee was compelled to recover from them what they had received.

(3) Those who received a pledge of property from their debtor as collateral security for an antecedent debt, the enforcement of which would work a preference, but which could only be enforced through a claim against the bankruptcy estate.

(4) Those (otherwise of class 2) who had knowledge (or its equivalent) of the insolvency of the debtor.

### Class 4 Eliminated.

We may, because of the fact finding of the referee, eliminate class 4 from our consideration. We have not been impressed, as was the referee, with the significance of some of the evidentiary facts which led him to the conclusion that the petitioners were innocent of all knowledge of the insolvency of the debtor, but we accept the fact finding he has made.

### Class 1—The Friedberg $500 Claim.

[1] We think the $500 loan made by Friedberg comes squarely within this class. As we view it, he made the loan in reliance upon the margin of $500 which he thought to be in the bonds he held. On the faith of this pledge he gave the "then present consideration" of $500, and thereafter this part of his claim was "a secured claim," and should have been allowed as such. We have no doubt this would have been the view of the referee, except for the fact finding made by him that the petitioner held no pledge of these bonds for this part of the debt, because the president, who negotiated the loan, had no authority to pledge the bonds. We have called this a fact finding, although the referee bases it upon his construction of the resolution of the board of directors, holding that under it the authority of the president was limited to creditors whose debts were past due.

We think the referee has given a too narrow construction to this resolution, and was wrong in viewing it as the sole authority of

the president to make the pledge. He had control of the bonds, with, we find, full authority to pledge them for the loan, and did so. With this fact found, as we find it, the Referee would have allowed this claim, and we direct that it be allowed as a secured claim.

#### Classes 2 and 3.

[2] As we view it, the whole question resolves itself into that of whether the claims (other than the $500) belong to class 2 or 3, and this is determined by the Bankruptcy Act. The early sections are no more than defining clauses, and so general as to be of little or no aid to us. Section 57 (11 USCA § 93) we would likewise pass without comment, except for one circumstance. In the original act no claim could be proven, except by a surrender of all securities held. In the amended act this is changed to the cited clauses of sections 60 and 67 (11 USCA §§ 96, 107). We do not view this change, however, as a command to allow all claims otherwise secured, but as merely defining the cost to be paid for the allowance of some claims against the bankruptcy assets. Whether the instant claims are within class 3 or 2 is determined by section 60, clauses (a) and (b). The first, let it be noticed, defines what is an unlawful preference; the second relates to the subject of what transfers can be recovered by the trustee from the grantee. The difference between the two clauses is that the first is silent on the subject of knowledge of insolvency, and refers to the effect of the transfer as something in futuro which will be worked by the pledge; the second emphasizes the element of knowledge of insolvency, and speaks of the effect upon other creditors as something which has been the result or consequence of what has already been done, and defines the conditions upon which the trustee can recover from the former creditor what he has received.

Translated into the concrete, this means that, if the creditor is making a claim against the bankruptcy estate, he belongs to class 3, and the preference given him as a secured creditor is avoided under section 60, clause (a); if, however, the trustee is seeking to recover something from the former creditor, the latter belongs to class 2, and the trustee can recover only under section 60, clause (b). The distinction in the case of transfers is very much that of the distinction between executory and executed contracts. In the case of pledges, it is that between a creditor holding a pledge and one whose claim is solely that of a pledgee. Here the petitioners belong to class 3, and are making claims against the bankruptcy estate to which section 60, clause (a), is a bar. Section 60, clause (b), has no application, because here the trustee is not seeking "to recover" anything. It only remains to inquire whether this conclusion is in accord with the cited cases.

The main reliance of the petitioners is upon Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, in which a former creditor was permitted to recover upon a mortgage which had been given for an antecedent debt. There are several features of this case to be noted. In the first place, it was decided under the law as it was in 1904. In the next place, it was ruled as in effect a case stated upon the facts as found by the court whose judgment was under review. See pages 238 and 239 (29 S. Ct. 442). In the third place, under the facts as found, the mortgage had been taken for the debt, which brought the case into class 2, ruled by section 60, clause (b), and it was so ruled. The cited case in consequence does not rule the instant case.

The next case in order is In re Gaylord (D. C.) 225 F. 234. Here the facts (see page 236, 29 S. Ct. 441) bring the case within class 2, and in consequence within the ruling in Coder v. Arts. We do not have access to the record, but the case clearly was that of a creditor who had received for his debt a mortgage and a part payment upon it, and then a sale was had, divesting the lien of the mortgage, leaving to the creditor a claim to the proceeds. His whole claim was that of a lienholder, but it was presented, or at least the referee treated it, as a secured claim against the bankruptcy assets as a class 3 claim, and rejected it under section 60, clause (a). The referee was reversed, because the claim was a class 2 claim, protected by section 60, clause (b). We pass the many cases defining knowledge and reasonable cause to believe, etc., but with the comment that in every reference to section 60, clause (b), it is of the "obtaining" of something by the creditor, "or receiving payment of his debt." Grant v. First Nat. Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Masonic Sav. Bank, 108 U. S. 74, 2 S. Ct. 219, 27 L. Ed. 640. The cited case of Kennard v. Behrer (D. C.) 270 F. 661, is clearly a class 2 case, within section 60, clause (b).

Pyle v. Texas, 238 U. S. 90, 35 S. Ct. 677, 59 L. Ed. 1215, was the case of a bill by a trustee. The title to the property transferred was admitted not to be in the trustee, if the transfer was good. It was sought to be avoided under section 60, clause (b). The court ruled that knowledge of the transferee

must be proven before the trustee could recover. This, it will be seen, does not touch the instant case. The cited cases lay down the first of the following propositions and are wholly consistent with the second.

1. A trustee cannot recover from a former creditor property transferred by a debtor bankrupt without proof of the knowledge, etc., of the insolvency of the debtor required by section 60, clause (b).

2. A creditor of a bankruptcy estate cannot establish as a preferred or secured claim one based upon a transfer made by the debtor bankrupt which is a preference as defined by section 60, clause (a).

An appropriate order as indicated by this opinion may be submitted.