JOHN T. STARK, Trustee, Appellee, v. ROY L. WHITE et al., Appellants; R. C. DURR, Appellee.

No. 41483.

900

November 22, 1932.

Rehearing Denied March 8, 1933.

Maxwell & Ryan, James B. Ryan, and Lehan T. Ryan, for appellants.

Watson & Watson, for John T. Stark, appellee.

Henderson & Wilson, for R. C. Durr, appellee.

Bliss, J.—On February 11, 1931, J. A. Borchers filed his petition in the District Court of the United States for the Southern District of Iowa, asking that Roy L. White be adjudicated a bankrupt,

because he had committed an act of bankruptcy by executing a chattel mortgage on November 10, 1930, thereby transferring, while insolvent, a portion of his property, consisting of a creamery equipment, at Indianola, Iowa, to John S. Hayes, a creditor of White, with intent to prefer said creditor over White's other creditors. White first resisted the proceedings by filing an answer denying the allegations of the petition, but later consented to adjudication as a bankrupt, and was so adjudicated on June 25, 1931. The plaintiff was appointed and qualified as trustee of the bankrupt, and on August 15, 1931, filed his petition in this action asking that the said mortgage and also a later bill of sale covering the same property be set aside.

As a decision of the case hinges largely on the facts, we will briefly set out what the record shows. Borchers and White had attended Iowa State College at Ames, together. On leaving school the former purchased a creamery at Indianola in May, 1930, for $2,500, which he operated until August 1st, 1930, when he sold it to White for $3,300. White paid $600, in cash, on the purchase price, and the balance by two notes payable to Borchers, dated August 1st, 1930, bearing 6% interest, one being for $1,500, due in six months, and the other for $1,200, due in six months. His brother, Frank White, also signed the notes. Borchers suggested that he ought to have security, but required none, when told by White that the business might demand that he borrow money and he would be required to place a mortgage on the property. Sixty dollars was paid on these notes on September 17, 1930, and $80 on November 20th, following. No further payments were made.

The defendant John S. Hayes and White had been acquainted for three years prior to July 30, 1930. They were both traveling salesmen, living at Waterloo, and met frequently, while traveling, and at home. White knew that Hayes had some money available, and about the time he was negotiating for the creamery, he told him that he needed money to make the purchase. He also told Hayes that a party by the name of Fletcher had promised him the money, but did not have it just then. He asked Hayes for the loan of $2,500 until he could get the money from Fletcher. Hayes loaned him the money and took his note therefor dated June 25, 1930, due November 28, 1930. Sometime prior to the maturity of the note, Hayes met Fletcher, and the latter assured him that his money was in a building and loan company in Wisconsin, and he had not been able to get

it released, but that he was going to, and would loan $2,500 to White, just as soon as he received the money. On November 9, 1930, Hayes went from Des Moines to Indianola to see White about the money. He met White on the road while returning to Des Moines. He told White that he needed the money, and that, inasmuch as he had been promised security when he loaned the money, he thought that it should be given. The next morning White and his wife and Hayes called at the office of the latter's attorney, where a mortgage on the creamery equipment and a mortgage on their household goods were executed by White and his wife to secure Hayes for the $2,500 note of July 28, 1930. Hayes said that so far as he knew at that time White's financial condition was good; that he knew nothing about any debts of or claims against White; that he had no knowledge of White's indebtedness to Borchers; that he knew nothing about his business; that he had looked up the records in the recorder's office at Indianola, before taking the mortgage, and found the property was clear of all liens. He said he had no thought of a preference or of procuring one. Both mortgages were recorded on November 12, 1930.

Hayes had been examined in the bankruptcy proceedings, and parts of his testimony were read into this record from a transcript of the bankruptcy hearing. At that hearing he testified that he knew that White was in some financial difficulty, and that for some reason he was not able to make payments to him. He also testified that at the time he loaned White the money he had no agreement with him for a chattel mortgage. Objection was made by Hayes to the introduction of this testimony, but the parts offered were admissible as admissions of Hayes against his interest.

Sometime after the giving of the mortgage in November, White again saw Hayes and told him that Fletcher had not been able to get his money as yet. Again in February, 1931, White informed Hayes of this fact. At this time Hayes insisted on being paid, and a meeting was arranged between Hayes, White and the defendant Durr, who was employed at the creamery. It was agreed that Durr should buy the creamery for $2,200 and pay the purchase money to Hayes, in the following manner, to wit, $100 in cash, a promissory note for $100 due April 1, 1931, and a note for $2,000 payable in monthly installments of $50 commencing on March 15, 1931, with interest at 7% on the deferred payments. This agreement was embodied in a combined contract and bill of sale executed on Febru-

ary 5, 1931. After the execution of these instruments, and the execution of a chattel mortgage on the creamery property by Durr to Hayes, the mortgage given by White on November 10, 1930, was released, and the Durr mortgage was accepted in its place to the amount of $2,200. White was released of that amount of his indebtedness to Hayes. At this time Hayes knew that part of White's indebtedness to Borchers had not been paid.

It appears from the record that the creamery property, at all times pertinent to this action, was fairly worth between $2,500 and $3,000.

The trial court found that White was insolvent when the mortgage was given in November, 1930, and that Hayes had reasonable cause to believe that fact, and that the effect of the transfer was to create a preference, and also found that the transaction in February was for the purpose of carrying out said preference. The court further found Durr was a purchaser in good faith. Decree was entered that the mortgage and notes of $2,200 given by Durr to Hayes should be transferred by Hayes to the trustee in bankruptcy. Judgment was given against Hayes for $376 which Durr had paid to him on the purchase price.

White did not appear as a witness. This appeal is prosecuted by Hayes as the principal appellant.

I. This appellant contends that the court was in error in finding that White was insolvent at the time of either transaction. The only testimony as to insolvency was that given by the cashier of an Indianola bank. He said that he had known White for about a year previous to August, 1930, when he went into the creamery business; that he did his business at his bank; that he did not carry a large balance in the bank; that he overdrew at one time; that he made application in September or October, 1930, for a loan for a short time to cover some outstanding checks; that at that time he investigated his financial condition, and learned what property he had; that White told him that the creamery equipment and household goods were all the property he had; that he knew what White told him about his indebtedness, but did not know the exact amount, although he knew the amount of the debt owing Borchers. This witness had also had some connection with the creamery prior to White's ownership, and knew the fair value of the equipment. He testified that in his opinion White was insolvent on November 10, 1930. There was no other competent testimony bearing upon the

question of insolvency. While it was shown, over objection, that White was adjudicated bankrupt on June 25, 1931, this fact would carry with it no presumption of his insolvency in the preceding February and November. Waite v. Citizens State Bank, 178 Iowa 1331; Gratiot Company State Bank v. Johnson, 249 U. S. 246, 63 L. Ed. 587; Sheppard-Strassheim Company v. Black, 211 Fed. 643 (C. C. A., Ill.) ; Hussey v. Dry Goods Company, 148 Fed. 598 (C. C. A., Kan.) ; Peoples National Bank v. Foltz, 25 Fed. (2nd) 295 (C. C. A., Ohio) ; Martin v. Bigelow, 73 N. Y. Supp. 443.

■ The schedules filed by White in the bankruptcy court were introduced, over objection. These showed debts totaling $3,134, including the Borchers debt, but there was nothing to indicate when any of these debts, except the latter, accrued. These schedules were not admissible, as against Hayes, to prove White's insolvency at the times of the transfers, being merely admissions of an assignor after he has parted with his interest to the alleged preferred creditor. 4 Remington on Bankruptcy (3d Ed.), Section 1755; Batchelder v. Bank, 105 N. E. 1052 (Mass.) ; Halbert v. Pranke, 97 N. W. 976 (Minn.). Neither was the order of adjudication admissible. The court, no doubt, disregarded all of this incompetent evidence. While the burden was on the appellee to establish this issue, it is of some significance that the appellant made no attempt to rebut any of the testimony offered to sustain this issue.

■ II. The appellant Hayes complains of the court's finding that he had reasonable cause to believe that White was insolvent when the transfer was made and that it would effect a preference. This is the crucial and the bothersome question in the case. For that reason we have set out the substance of all the testimony bearing upon that issue.

■ The grounds for that belief must be determined as of the 10th of November, 1930. The court considered the transaction in February rather as the culmination or fruition of the November transaction. We cannot go that far with the court. To us it seems that they were separate transactions, and that the first was fully consummated without any thought or anticipation of the second, and if the appellee has failed to show that Hayes had reasonable cause to believe in November, then he cannot aid his cause by evidence of that fact on February 5th. The rights of the parties were fixed as of the earlier date. If a preference was effected at all, it was effected then. The property which Hayes received in February

was but a substitution for what he had received in November. In one sense, and in reality, it was not a substitution of property, but only a change of mortgagors, with the property remaining the same. There was no change in the value of the security except in natural depreciation. If the transaction in November was not a preference, then that of February was not. The mere exchange of property of equal value within the four-months period does not constitute a preference, nor will the renewal of securities of equal value. 4 Remington on Bankruptcy (3d Ed.), Section 1785; In re Mackinnon Mfg. Co., 24 Fed. (2nd) 156 (C. C. A., Wis.); In re Cutting, 145 Fed. 388 (D. C., N. Y.); Deland v. Miller & Cheney Bank, 119 Iowa 368; Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235; Chattanooga National Bank v. Rome Iron Company, 102 Fed. 755; In re Noel, 137 Fed. 694.

The principles of law governing a matter of this kind are well settled by the decisions of this court and of the courts of the United States. Section 60b of the Bankruptcy Act (11 U. S. C. A., Sec. 96b) provides:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer, * * * or of the recording or registering * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. * * *"

The burden was upon the appellee to establish matters stated in the foregoing section. Hayes cannot be charged with the knowledge of White's financial condition from the fact that he had not paid him, though urged to pay. Boudinot v. Hamann, 117 Iowa 22. The fact that he may have suspected that White was in some degree financially embarrassed, and was on that account anxious to have his debt paid, is not sufficient. Burnham v. Ft. Dodge Grocery Company, 144 Iowa 577, 583. Hayes' apprehension or suspicion was not the equivalent of good cause to believe that White was insolvent. Soper v. International Harvester Company, 194 Iowa 868. The record shows that Hayes did not know of the debt to Borchers, nor of any specific debts, nor the extent of White's indebtedness. Rice

v. Melendy, 41 Iowa 395. He did not know Borchers, and he had no reason to even suspect that the creamery property was not paid for, as it was to provide funds for its purchase that Hayes loaned him the money. We said in Mantz v. Capital City State Bank, 191 Iowa 572:

"It is well settled by the authorities that mere apprehension, or even ground of suspicion, on the part of a creditor is not the equivalent of good cause to believe. Solvency is the rule, and insolvency the exception. The indebtedness to the bank was for borrowed money, for use in the business. It was evidenced by short-time notes. The fact that the money was loaned is evidence of the good-faith belief of the bank officers of the solvency of their debtor. * * * The quality of proof required is indicated in Grant v. National Bank, 97 U. S. 80, and in In re Eggert, 102 Fed. 735."

The language referred to in the Grant case (97 U. S. 80), supra, is as follows:

"Some confusion exists in the cases as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' *Dicta* are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to suspect such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of this debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it,— and yet such belief as the act requires may be wanting. Obtaining additional security or receiving payment of a debt under such circumstances is not prohibited by law."

Other decisions affirming this statement of the law are Waite v. Citizens Bank, 178 Iowa 1331; Doxsee v. Waddick, 122 Iowa 599, and the late case of Dwight v. Horn, 215 Iowa 31, wherein we have

reaffirmed the principle as laid down and approved in our earlier cases, and refused to set aside a transfer where this issue on the part of the trustee was supported only by inference.

While we are loath to disagree with the finding of the trial court, we believe that the trustee did not establish this essential of his case by a preponderance of the evidence. We said in Burnham v. Ft. Dodge Grocery Company, supra:

"The burden is upon the plaintiff to establish the affirmative of that proposition, and as he relies solely upon circumstantial evidence, his claim cannot prevail if, when fairly considered, the proved circumstances are as consistent with the theory of good faith on the part of the defendant as they are with the theory of its bad faith or fraudulent purpose. * * * If Woodward * * * does not commit perjury, he did not understand or believe that Adams was at that time insolvent, or that this payment was made to give a preference."

The foregoing statement, including the last sentence, fits the situation in this case.

Appellant claims other errors, and particularly as to the reopening of the case ten days after it was closed, in order to permit the appellee to introduce evidence of certain matters that had been inadvertently overlooked; but we find no justification for the complaints. The reopening was proper and within the court's discretion.

The court by its decree dismissed the action as to Durr. We agree with this finding, as there is nothing to indicate that Durr was not a purchaser in good faith and for value.

Because of our finding in Division II hereof, the decree on appellants' appeal is reversed, and as to the appellee Durr, it is affirmed.

STEVENS, C. J., and EVANS, ALBERT, KINDIG, and CLAUSSEN, JJ., concur.