In re VENIE et al.

No. 2522.

United States District Court
W. D. Missouri, S. D.

Sept. 3, 1948.

248

See also 80 F.Supp. 250.

M. H. Galt and A. P. Stone, Jr., both of Springfield, Mo., for bankrupts.

Farrington & Curtis, of Springfield, Mo., for Springfield Grocery Co.

RIDGE, District Judge.

On review of the order of the Referee finding bankrupts preferred one of their creditors, Springfield Grocery Company, over other creditors and ordering such preferred creditor to pay the amount of such preference over to the Trustee in Bankruptcy, under Section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b, the following facts appear:

February 24, 1948, appears to be the date of adjudication of bankruptcy herein. Bankrupts, prior thereto, engaged in the candy business, had a running account with Springfield Grocery Company. On January 1, 1948, bankrupts owed the grocery company approximately $8,000.00 on said account which had accumulated for merchandise purchased by bankrupts in the regular course of business. The last payment made by bankrupts on said running account was in November, 1947. After such payment, amounting to approximately $6,200.00, was made, bankrupts continued to purchase merchandise on open account from the grocery company, "right up until Christmas time" 1947. Springfield Grocery Company expected bankrupts to make a substantial, if not complete payment of the balance on said account on January 1, 1948. The credit manager of the grocery company being disappointed that the account had not been paid in the ordinary course of business, called on the bankrupts for an explanation, and the bankrupts told such manager that they could not pay the account because they were overstocked and business was bad. At such conference, it was suggested that the grocery company take some of the candy bankrupts then had in stock. (The inventory value of bankrupts' stock then amounted to approximately $17,000.00.) Pursuant to such an arrangement, the grocery company selected candies of the value of $874.77, which were delivered to it by bankrupts and for which the grocery company gave credit to bankrupts on account. Prior to such transaction and during the period of the running of the open account between bankrupts and the grocery company, several similar transactions (wherein the grocery company purchased candy of bankrupts and gave bankrupts credit for the amount there-

of on the open account) took place between said parties.

While the last mentioned transaction was being negotiated by bankrupts and the grocery company, an audit of bankrupts' books was being made, as of January 1, 1948. Said audit being completed some time after January 15, 1948, and subsequent to the time of the delivery of the above mentioned candy by bankrupts to the grocery company, revealed bankrupts to be insolvent as of January 1, 1945. The grocery company, at the time said candy transaction was negotiated and the candy was delivered to it, did not know the result of such audit, though shortly thereafter such fact was made known to it. The Referee found, and we concur, that on the record made, and here reviewed, no facts are shown whereby "the grocery company was * * * guilty of any fraud in accepting payment" on its open account with bankrupts by the consummation of said transaction.

Under the above facts, the Referee declared a preferential payment as having been made by bankrupts to the grocery company and ordered payment of the amount thereof to be repaid to the Trustee in Bankruptcy. The Referee premises his order on the following conclusions: That the grocery company should have been put on its guard when bankrupts told its credit manager that they were "overstocked", that their "inventory was too large", that they could not pay" the grocery company because "business was bad"; and because the payment made on said account "was not a payment in cash in the ordinary course of business" but "was a payment on an account by merchandise, and not merchandise of the creditor but other merchandise."

■ In so concluding, we believe the Referee to be in error. The elements of a preferential transfer by a bankrupt are: (1) The insolvency of the bankrupt at the time the preference is given; (2) The giving of a preference within four months prior to the filing of the petition in bankruptcy; (3) The necessity that the creditor receiving the preference will thereby obtain a larger percentage of his debt than any other creditor of the same class; (4) The diminution or depletion of the estate of the debtor resulting from the alleged prefer-

ence; (5) The person receiving the preference has reasonable cause to believe, at the time of receiving it, that the enforcement of the transfer would effect a preference. Ernest Wolff Mfg. Co. v. Battreal Shoe Co., 192 Mo.App. 113, 180 S.W. 396. We may assume, without a specific finding to that effect that the first four elements above enumerated are established by the evidence in the instant record. We will confine our consideration of the record to the fifth element.

■ The burden of proof is upon the Trustee in Bankruptcy to prove that the grocery company had reasonable cause to believe that the enforcement of the transaction considered would effect a preference in its favor. First National Bank of Lake Benton v. Galbraith, 8 Cir., 271 F. 687; Pyle v. Texas Transport & Terminal Co., 238 U.S. 90, 98, 35 S.Ct. 667, 59 L.Ed. 1215. The fact, if it be a fact, that the grocery company may have had reason to suspect that the transfer would effect a preference, is not equivalent to a reasonable belief that the transfer would have that effect. Grant v. First Natl. Bank of Monmouth, 97 U.S. 80, 81, 24 L.Ed. 971; Nichols v. Elken, 8 Cir., 225 F. 689, 691. And the fact that the grocery company might have known that the candy company was insolvent at the time of the transfer did not create a preference within the meaning of the statute unless the grocery company also had reasonable ground to believe that the transfer would have such effect. Kennard v. Behrer, D.C.S.D.N.Y., 270 F. 661, 664; Everett v. Warfield Mining Co., 4 Cir., 37 F.2d 328, 330; Charlesworth v. Hipsch, Inc., 8 Cir., 84 F.2d 834, 837.

■ Such being the law governing review of the instant order, we do not believe that knowledge by a creditor of the fact that a debtor is "overstocked"; that the debtor has an "inventory" that "was too large"; that a debtor "could not pay" an open account when urged to do so; or, that the transaction between the grocery company and the candy company being not a "payment in cash" but a "payment on account by merchandise" whether singly or collectively acquired, is such knowledge as would constitute existence of reasonable grounds on which the grocery company

under the facts shown in evidence could be said to have reasonably premised a belief that the transfer in question would effect a preference to it, within the meaning of Section 60, sub. b, of the Bankruptcy Act.

The evidence in the record reveals that the value of the stock of candy of bankrupts at the time of the transaction in question amounted to approximately $17,000.00. The grocery company's account only amounted to $8,000.00. There is no evidence in the record that the grocery company, at the time of the transaction, had knowledge of any other creditors, or the then insolvency of the bankrupts. The Referee found that in such transaction the grocery company was not guilty of any fraud. The fact that a debtor is "overstocked" is not evidence of insolvency when the inventory value of a stock of goods is reasonably determined to be worth the market value thereof. The mere inability of a debtor to make payments on demand while at the same time continuing business does not imply insolvency. Miceli v. Morgano, D.C., 36 F.2d 507; Stark v. White, 215 Iowa 899, 245 N.W. 337. The fact that a creditor knows that his debtor is financially embarrassed and that the creditor is pressing for payment are not facts necessarily sufficient to charge the creditor with reasonable grounds to believe that the debtor is insolvent. In re Salmon, 2 Cir., 249 F. 300. That a debtor's business is bad and it is necessary continually to press him for payment does not as a matter of law constitute reasonable cause for the creditor to believe that the debtor is insolvent. William Schuette & Co. v. Swank, 265 Pa. 576, 109 A. 531. The fact that the transaction considered resulted in a credit to bankrupts' account with the grocery company, instead of a cash payment thereon, is no evidence of insolvency. From all that appears in the record, such transaction occurred in the usual course of bankrupts' business, the same as other such transactions had taken place between said parties; and that all the parties intended thereby was to aid bankrupts in moving a small portion of their "overstocked" warehouse inventory at a time when bankrupts were continuing in business. Adjudication of the candy company did not result until more than thirty (30) days after said transaction. Under such circumstances, we do not believe that a voidable preference to the grocery company is established by the record herein.

The order of the Referee, ordering Springfield Grocery Company to pay to the Trustee in Bankruptcy the sum of $874.77 because of preference granted to it over other creditors of bankrupts, is reversed.