EAST TENN. IRON MAN. CO. v. GASKELL et als.

1. PROMISSORY NOTES. *Makers individually liable, though they promise as executors.* A promissory note by which the makers, executors of a person named, promise, as such executors, to pay the amount called for, is binding on the makers personally, although their official designation be added to the signature of each maker.

2. PRACTICE. *Immaterial pleas.* To a declaration on a note against executors, seeking to hold them personally liable, pleas which set up defenses to a suit against them in their representative character, are immaterial, and may be stricken out on motion, or treated as immaterial on the trial, although issue be joined on them.

3. SAME. *Verdict on immaterial plea.* A verdict in favor of the plaintiff on an immaterial plea entitles the plaintiff to judgment.

4. STATUTE OF LIMITATIONS. Where the note sued on fell due after the the 6th of May, 1861, but before the suspension of the statute of limitations in 1865, the time which elapsed after its maturity until the passage of the act of suspension, being less than the period of limitation for the particular cause of action, cannot be added to the time after the 1st of January, 1867, when the statute again began to run, until suit brought, to complete the bar.

E. T. Iron Man. Co. *v.* Gaskell.

5. SUIT BY A CORPORATION. *Duration of charter no defense.* It is no defense to an action by a corporation on a note made payable to it, that the charter of the corporation fails to define the period of its duration.

FROM HAMILTON.

Writ of error to the Circuit Court of Hamilton county. D. M. KEY, Ch., sitting by interchange.

TOMLINSON FORT for Manufacturing Company.

VANDYKE, COOKE & VANDYKE for Gaskell *et als.*

COOPER, J., delivered the opinion of the court.

In this suit, commenced on the 13th of March, 1872, a judgment was rendered in favor of the plaintiff on the 11th of May, 1875, against V. A. Gaskell and his wife, H. L. Gaskell, formerly H. L. Whiteside, and Robert Cravins. It is before us by a writ of error sued out by the plaintiff, and another writ of error sued out by Gaskell and wife. The suit was upon the following note:

Chattanooga, 17th of Nov., 1862.
$3,028. On settlement this day made, we the undersigned, executors and executrix of James A. Whiteside, deceased, promise, as such executors and executrix, to pay the East Tennessee Iron Manufacturing Company three thousand and twenty-eight dollars.

> H. L. Whiteside, Executrix.
> W. B. Whiteside, Executor.
> R. Cravins, Executor.

The writ was issued against the makers of this note individually, and in their representative capacity, and the declaration contained two counts, in one of which they were declared against as executors, and in the other as individuals. The defendants demurred to both counts, and the Circuit Judge sustained the demurrer to the count which sought to hold the defendants liable in their representative capacity, and overruled it as to the other count. The recovery was had upon this last count against the defendants individually, and the writ of error of Gaskell and wife is to bring up this judgment, mainly upon the ground that the note does not bind the makers individually, but only the estate they represent. The writ of error of the plaintiff was sued out, doubtless, to meet the contingency of this view being sustained by the court. In that event the plaintiff could confidently insist upon the validity of the first count of his declaration, and assign as error the action of the circuit court in holding it bad on demurrer. The first point for consideration, therefore, is, whether the defendants made themselves personally liable by the instrument sued on.

An executor has no authority, by virtue of his office, to make a promissory note binding upon the testator's estate, and the promise must be that of the signer as an individual to have any efficacy. 1 Dan. Neg. Inst., sec. 262. If a person promise in his own name, by note or written obligation, he is personally bound, though he state it to be in a representative capacity as executor, guardian, trustee, com-

mittee, agent, or otherwise.  *Steele* v. *McElroy,* 1 Sneed, 341; *Carter* v. *Wolfe,* 1 Heis., 698; *Erwin* v. *Carroll,* 1 Yer., 145.   In order to prevent this result, he must take care to express on the face of the paper the extent and nature of the covenant.   *Jordan* v. *Trice,* 6 Yer., 479; *Kain* v. *Humes,* 5 Sneed, 610; *Cruze* v. *Jones,* MS. opinion at the present term.   If an executor make, accept, or indorse a negotiable instrument, he will bind himself personally, even if he add to his name the designation of his office as personal representative, or directly promise as executor. *Childs* v. *Monins,* 5 Moore, 282.   This is the rule generally of a promise in the representative character. *Steele* v. *McElroy,* 1 Sneed, 341.   A personal representative, who executes a note for the debt of his testator or intestate, will be personally bound to pay it, even as between him and the original holder, for the assets of the estate in his hands constitute a sufficient consideration for a promise by him to pay the decedent's debt, and the promise being in writing, no proof of consideration is necessary, though, as between the original parties, he may rebut the presumption of assets and show a total or partial deficiency, in which event he will be exonerated from liability *pro tanto,* unless there was some other consideration moving to him personally.   *Snead* v. *Coleman,* 7 Gratt., 300; *Bank of Troy* v. *Topping,* 13 Wend., 273.   He can only exclude all personal liability by restricting his promise to pay to the assets of the estate by apt words, in which case the instrument, being payable out of a particular fund would not be negotiable.   1

Dan. Neg. Inst., sec. 263; 1 Pars. N. & B., 161; Sto. on Notes, sec. 63. The words of this note are not sufficient to take it out of the general rule. The promise is general, and binding on the makers as individuals. And, on the trial, it was admitted that the testator's estate was solvent, and the assets ample to pay all its debts. Conceding that the note was given on settlement of the testator's debt, the defendants have thereby made themselves personally liable for the amount, and no parol testimony would be admissible at law to change its terms or legal import. *Campbell* v. *Upshaw*, 7 Hum., 185; *Bridges* v. *Robinson*, 2 Tenn. Ch., 723.

The defendants filed the following pleas to the count in the declaration seeking to charge them personally:

1. *Nil debit.*

2. Payment.

3. That the debt was due by defendants as executors.

4. That the plaintiff had ceased to be a corporation, by the abandonment of its charter and organization, more than five years before suit brought.

5. Same in substance as the third plea.

6. That the cause of action had accrued more than six years before suit brought.

7. That the suit had not been brought within two years and six months of the qualification of the defendants as executors.

8. That the cause of action had accrued more than two years and six months before suit brought.

The counsel on both sides have argued as if nine pleas had been filed. But this is a mistake. The clerk, in making out the transcript, has merely copied the fourth plea twice. The special replication to the sixth plea, and the charge of the court, as embodied in the bill of exceptions, show that there were only eight pleas.

The record shows that all of these pleas, except the first two, were stricken out by the court, upon the motion of the plaintiff, as immaterial. It also shows that replications were filed, and issue joined as if they had not been stricken out, and that these issues were submitted to the jury, or ruled upon by the presiding judge at the trial. He treated the 3d, 5th, 7th, and 8th pleas as immaterial. The plaintiff seems to have acquiesced in the course of the defendants in continuing to rely upon all the pleas, because four of them seemed to concede the liability of the estate, and he insisted, notwithstanding the ruling of the court upon the demurrer to the declaration, that he was entitled to judgment against the defendants in their representative capacity. Obviously, these four pleas were a departure from the declaration, which was, by the ruling of the circuit judge on the demurrer, cut down to a single count against the defendants as individuals. They were clearly immaterial, and were properly stricken out, and, if considered as reinstated by the act of the parties, were properly treated as immaterial on the trial. *Sanders* v. *Young*, 1 Head, 219.

The 4th plea, that the plaintiff had ceased to be a corporation by abandonment of its charter and or-

ganization, was clearly bad. The cesser of the use of the corporate franchises, although it may authorize the courts, at the instance of the State, to declare a forfeiture under the Code, secs. 3409, 3425, does not of itself work a dissolution. And the Code, sec. 3431, expressly provides that a corporation is not dissolved by the non-use, or assignment, in whole or in part, of its powers, franchises and privileges, unless all the corporate property has been appropriated to the payment of its debt. On the trial, it was shown that the corporation had not abandoned its organization, which was kept up for the purpose, doubtless, of collecting its assets and paying its debts. A verdict in favor of the plaintiff on an immaterial plea entitles the plaintiff to judgment. *Bledsoe* v. *Chouning*, 1 Hum., 85.

The 6th plea, that the cause of action had accrued more than six years before suit brought, in view of the suspension of the statute from the 6th of May, 1861, to the 1st of January, 1867, of which the court must take judicial notice, was also bad. For the cause of action might have accrued more than six years before suit brought, and yet the statute be no bar. To this plea, however, the plaintiff filed a special replication, that the statute was suspended as aforesaid, and the issue joined thereon was submitted to the jury, under a proper charge, and found in favor of the plaintiff. The learned counsel of the defendants is mistaken in supposing that this court has ever held that the period of time between the maturity of a debt after the 6th of May, 1861, and the suspension of the statute of limitations in 1865, can be counted

to make out the bar of the statute.    The power of the Legislature to suspend the statute before the completion of the bar has never been doubted.    It is only when the bar was completed before the suspension of the statute, that the right acquired has been considered as vested so as to be beyond the legislative control.    And even then the rule ought, perhaps, to be limited to cases where the statute operates to vest title, or extinguish the demand.

On the trial, there was evidence tending to show that the plaintiff had given the benefit of the note sued on, or its proceeds, to one of the stockholders, and the court very properly instructed the jury that if the note was transferred by the company before suit brought, the action could not be maintained; but if it was only declared by the corporation that one of the stockholders should be entitled to the paper or its proceeds, the corporation might still sue in its own name.

The defendants requested the court to charge that the charter of incorporation of the plaintiff was a nullity, because it failed to fix any period for the duration of the corporation, which the court refused.    The argument made is that a perpetual charter of incorporation would be a violation of the Constitution, Art. 1, sec. 22, which forbids perpetuities.    But the intimation of this court in *Franklin* v. *Armfield*, 2 Sneed, 353, is to the contrary.    And whether this be so or not, it is very clear that the defendants are estopped to set up the objection to avoid a just debt.

There is no error in the record, and the judgment must be affirmed with costs.