## FELDMAN v. AMERICAN PALESTINE LINE, Inc., et al.

## THE PRESIDENT ARTHUR.

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 223.

1. **Judicial sales** ⊛═28—**Court may fine defaulting purchaser, and direct fine paid to injured party, including attorney's fees and expenses.**

If purchaser at judicial sale, in failing to perform, is guilty of contempt, court may fine him, and direct such fine to be paid to the injured party, including as such reasonable attorney's fees and expenses.

2. **Receivers** ⊛═136—**Agent for disclosed principal, making successful bid at receiver's sale, but failing to pay when so ordered, through failure of principal to furnish funds, held not guilty of contempt.**

Where successful bidder at receiver's sale of steamship acted for a disclosed principal, whose credit alone auctioneer relied on, *held*, refusal of agent to complete purchase, when so ordered by court, due to failure of principal to supply funds, did not constitute a contempt of court.

3. **Principal and agent** ⊛═136(1)—**Agent for disclosed principal may assume personal liability.**

An agent who contracts for a disclosed principal may assume personal obligation under contract, if such is the express intent of the parties.

4. **Principal and agent** ⊛═132(1)—**Disclosed principal and agent are not both liable on agent's contract.**

Both principal and agent are not liable on a contract by an authorized agent for a disclosed principal.

5. **Receivers** ⊛═136—**Disclosed principal, whose agent was successful bidder at receiver's sale of steamship, held guilty of contempt in delaying performance of bid and liable for counsel fees (Comp. St. §§ 1375, 1378).**

Where disclosed principal, whose agent was successful bidder at receiver's sale of steamship, *held* guilty of contempt in failing to complete purchase pursuant to order served on his agent, and liable for payment of penalties imposed by court, including reasonable fees for receiver's and creditor's counsel for services in connection with proceedings to enforce compliance with bid; Rev. St. §§ 823, 824 (Comp. St. §§ 1375, 1378), being inapplicable.

6. **Receivers** ⊛═136—**Purchaser at receiver's sale submits himself to jurisdiction of court, and may be compelled to carry out contract by rule of court or attachment.**

A purchaser of property sold by receiver under order of court submits himself to the jurisdiction of the court, and, when he refuses without cause to carry out his contract, may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale was had.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Morrison J. Feldman against the American Palestine Line, Inc., in which the court ordered sale at public auction of the steamship President Arthur. From an order affecting counsel fees in proceeding to compel purchaser at the sale to comply with his bid, Robert H. Collyer, agent for purchaser, appeals. Decree affirmed, with directions.

Pursuant to court order in the above-entitled cause, the steamship President Arthur was sold at public auction on December 21, 1925, and the bid of Robert Collyer was accepted. Collyer was acting as agent for one Charles L. Dimon, and thereafter Collyer informed the receiver that Dimon refused to complete the purchase. On December 31, 1925, the court made a decree, which, after reciting that Collyer had bid $130,000 as agent for C. L. Dimon and that the latter had deposited $5,000 on account of said bid, ordered that the sale be confirmed, that bills of sale covering the property sold be tendered to Collyer and delivered to him upon receipt of the purchase price, and that, if he failed to accept such tender and pay said purchase price, a similar tender be made to Dimon. A copy of this order was immediately served on Collyer, and the bills of sale were tendered to him, with demand for payment, and rejected. Several attempts to tender the bills of sale to Dimon were made at his office, but Dimon was said to be out of the state.

On January 7, 1926, on motion of the receiver's proctors, the court ordered Dimon and Collyer, and each of them, to show cause on January 9 why they should not be required to pay $130,000 for the purchase of the steamship, "and why, in addition thereto, they should not be required to pay for the maintenance, cost and upkeep of the said steamer since the sale herein and such other damages as may have accrued, and why, upon their refusal to pay the said sum of money, they should not be adjudged in contempt of court and fined the sum of $130,000 plus the maintenance, cost, upkeep, and

damages above referred to, and why they should not be committed until they pay the said fine," etc.

This order was served upon Collyer, but not upon Dimon. But on January 8, Mr. Purdy, an attorney, notified Dimon in Florida of the order and advised consummating the purchase. Dimon replied by telegram saying, "Agree as you advised," and giving instructions as to taking title in Collyer's name, etc. On January 11, 1926, the hearing on the order to show cause having been adjourned until that date, Collyer and his counsel and Mr. Purdy appeared and stated they were prepared to carry out the purchase. They thereupon paid the purchase price of the vessel, and all damages claimed by the receiver except two items. These two items were a claim for counsel fees of $1,500 to the proctors for the receiver, and a bill of disbursements of $154.94 incurred by Saul S. Myers, attorney for creditors, both fees and expenses having been incurred in connection with the above-mentioned proceedings to force Collyer and Dimon to carry out the purchase of the steamer. Collyer objected to paying these items, and at the suggestion of the court these sums were paid into court to await its final disposition of the matter, and the proceedings were continued. Thereafter, on August 9, 1926, the court entered the order appealed from. This order recited that the cause came on to be heard upon the application of the receiver to compel the purchaser of the steamship to complete his purchase and to pay costs and counsel fees incurred by reason of his contumacy and delay in completing said purchase; it decreed that the sum of $1,500, paid by said purchaser into court pursuant to its instructions to await the final disposition of the court as to the payment of counsel fees incurred in the application and other proceedings to compel the purchaser to complete his purchase, be allowed as reasonable counsel fees of the proctors for the receiver, and paid over to them by the clerk of the court, and decreed similarly that the item of $154.94 for disbursements be allowed and paid to Saul S. Myers.

Thomas A. McDonald, of New York City, for appellant.

Lampke & Stein, of New York City (Chauncey E. Treadwell, of New York City, of counsel), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] Counsel for the appellant has argued that the allowance of these two items was in contravention of sections 823 and 824 of the Revised Statutes (Comp. St. §§ 1375, 1378). In our view of the case, these statutes relating to taxable costs have no bearing. The sole question is whether a contempt of court was committed. If a contempt was committed, there is no doubt that the court may fine the contemnor and may direct such fine to be paid to the injured party as damages, including as such reasonable attorney's fees and expenses. In re Tift (D. C.) 11 F. 463; In re North Bloomfield Gravel Mining Co. (C. C.) 27 F. 795; Stahl v. Ertel (C. C.) 62 F. 920; Doubleday v. Sherman, 7 Fed. Cas. 959, No. 4020; Christensen Engineering Co. v. Westinghouse Air B. Co., 135 F. 774 (C. C. A. 2).

These proceedings were conducted in a fashion to make it quite impossible to discover the precise act of contempt which counsel for the receiver conceive to have been committed. Their brief gives no assistance. It merely asserts generally that there was a gross and open contempt of court practiced by both Dimon and Collyer.

[2-4] We will take up first the case of Collyer. The order of December 31 recites that Collyer bid as agent for Dimon, and that Dimon made the initial deposit. It orders that the sale be confirmed and bills of sale be tendered, first to Collyer, and, if he fails to accept and pay, then to Dimon. This is consistent only with the theory that the contract of sale is with Dimon, not with Collyer. An agent who contracts for a disclosed principal may, of course, assume personal obligation under the contract if such is the expressed intention of the parties. But the evidence is not to this effect. The auctioneer's affidavit states expressly that he sold on Dimon's credit, not on Collyer's. Although the bid was in Collyer's name, the contract was with Dimon, and therefore the order which confirms the sale confirms this contract. Both agent and principal are not liable on a contract made by an authorized agent for his disclosed principal. See Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. Dimon, not Collyer, was bound by the contract to pay the purchase price. Hence the order directing that the bills of sale be tendered first to Collyer cannot be construed as equivalent to an order that he pay the purchase price out of his personal funds. The tender was made to him as Dimon's agent. His refusal to accept the title documents and pay because Dimon had not supplied the funds did not constitute a contempt of court by Collyer.

Consequently, any order which should attempt to devote Collyer's money to payment of counsel fees of the receiver in enforcing the purchase would be erroneous. We doubt if the order appealed from did attempt this. It decreed that the sum of $1,500, "paid by the purchaser into court" (and the order of December 31 had recited that Dimon was the purchaser), should be allowed and paid to receiver's proctors. The telegrams and affidavits also lead us to believe that the money paid into court was actually Dimon's money. [5, 6] We come, then, to a consideration of whether Dimon committed contempt. A purchaser of property sold under order of court submits himself to the jurisdiction of the court, and, when he refuses without cause to carry out his contract, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had. In re Jungmann, 186 F. 302 (C. C. A. 2); Camden v. Mayhew, 129 U. S. 73, 9 S. Ct. 246, 32 L. Ed. 608; and see Quidnick Co. v. Chafee, 13 R. I. 367, 423–438. If the court had entered an order expressly directing Dimon to pay the purchase price upon tender by the receiver of title documents to his agent, Collyer, and he had refused to do so after notice of the order, he would have committed a contempt. The court might then have entered a formal order finding him guilty of the contempt, imposing a fine in the amount of the purchase price and damages, and directing that out of the fine a sum be paid to receiver's attorneys. Such formality, however, would not, in our opinion, have been essential. The court could have permitted him to purge himself by paying the purchase price and damages incurred by his contumacy, including in such damages reasonable fees of the receiver, without the entry of a formal order finding him guilty of contempt.

This is what we conceive to be the effect of the proceedings subsequent to the order to show cause of January 7th. The validity of the order appealed from, therefore, depends upon whether Dimon had, prior to January 7th, committed contempt.

The order of December 31, confirming the sale and directing that title documents be delivered in exchange for the purchase price, we regard as equivalent to an express order on the purchaser to pay the purchase price. It may be urged that the order directed a tender to Dimon in case Collyer rejected the tender to him, and that therefore there was no order that Dimon pay until a tender to Dimon personally. However, since Dimon had made his bid by agent and contemplated taking title in his agent's name, we believe the tender to Collyer imposed an instant duty upon Dimon to pay the purchase price, and that all subsequent delay in paying was a contempt of court. We regard the direction that a tender be made to Dimon as well as Collyer as an additional but unnecessary precaution in the effort to put him in contempt. Dimon, therefore, being in contempt, sends into court by his agent the funds with which to purge his contempt by completing the purchase. The court may impose terms upon which the contempt be purged. That Dimon through his agent willingly accedes to some of the terms and protests against others is immaterial. The agent deposits the money to await the court's decision on his protest. Argument is heard, and the court decides against him. We find no error in such decision.

The decree is affirmed, but with directions that the appellant may have leave to prove to the District Court that the funds deposited were his own and not Dimon's, and, if that fact be established, that the decree be reversed and a decree entered in favor of the appellant.