CUMBERLAND PORTLAND CEMENT
COMPANY, a Tennessee corporation,

v.

RECONSTRUCTION FINANCE CORPORATION, a corporation chartered
by acts of Congress.

Civ. No. 1798.

United States District Court
E. D. Tennessee, S. D.

Nov. 17, 1953.

≈188(3)

Spears, Reynolds, Moore & Rebman, Chattanooga, Tenn., Roy A. Miles, Nashville, Tenn., for plaintiff.

Noone, Tanner & Noone, Chattanooga, Tenn., for Trustee in Bankruptcy.

Hugh C. Gracey, Nashville, Tenn., for Ralph Rogers & Co.

DARR, Chief Judge.

This is an action to recover the sum of $14,767.23 for cement furnished by plaintiff for the account of Tullahoma Continuous Mix Company for which it is claimed the defendant agreed, in writing, to pay. An intervening petition has been filed by Ralph Rogers & Company, Inc., seeking a recovery of $13,897.37, and there is an intervention by the Trustee in bankruptcy seeking recovery for the amount paid into the registry of the court and funds paid to plaintiff and Rogers within four months of bankruptcy. All of these issues will be later discussed and determined.

The plaintiff claims that the defendant is personally liable to it by reason of its direct obligation to pay said indebtedness which was the basis upon which the cement was sold. And while defendant's obligation was only to pay out of certain assigned funds, the plaintiff says that the defendant had more than ample funds assigned to it which it actually received; and that instead of paying the plaintiff's debt as it agreed to do, it wrongfully diverted said funds to other purposes and to the payment of other creditors with respect to whom no such obligation existed.

Plaintiff says that payments from time to time made to it, and which the Trustee in bankruptcy seeks to recover back as preferential, as hereinafter shown, were made by the defendant out of funds, contracts or accounts receivable assigned by Tullahoma Continuous Mix Company to the defendant for the plaintiff's use and benefit at or prior to the respective shipments of cement; and that the shipments of cement constituted a present and adequate consideration for the assigments. Plaintiff further says that the assets of the Tullahoma Continuous Mix Company were not diminished by said assignments.

Plaintiff also claims that after May 11, 1951, the assigned funds in defendant's hands were impressed with a trust in favor of plaintiff from the time they came into defendant's possession, to the extent of plaintiff's debt. The plaintiff says that the defendant, in effect, guaranteed payment of the debt for the cement.

The answer admits in effect the sending of the telegrams of commitment above referred to, but it denies that they constituted a guaranty, or that it, as a governmental agency, had authority to make guaranty. It relies on plaintiff's letter of June 26, 1951 as authority for disbursement of the assigned funds to other creditors; and insists that said letter relieved it of the obligation of its telegrams. It says the plaintiff has thus agreed to an equitable distribution of the assigned funds; that defendant was merely a disbursing agent for the funds belonging to the Tullahoma Continuous Mix Company, and that the two creditors of that Company, Cumberland Cement Company and Rogers, to whom the balance of assigned funds have been obligated, are entitled to distribution pro rata.

Defendant further says that Rogers is asserting a claim against the balance of funds in its possession substantially on the same basis as the claims of plaintiff; and that there are other smaller creditors of the Tullahoma Continuous Mix Company who claim a right to a proportionate distribution of said funds. And the defendant says that by reason of the conflicting claims of creditors of the Tullahoma Continuous Mix Company, it is in doubt as to whom the balance of assigned funds in its hands should be paid. The balance of such funds is $12,234.91, which it has paid into the registry of the court, and it asks that this be treated as an interpleader and that other creditors be required to interplead their respective claims.

In the meantime, on August 28, 1951, the Tullahoma Continuous Mix Company filed a petition in bankruptcy in the Winchester Division of this court and J. Davis Wooten was duly elected Trustee. On March 28, 1952, the Trustee filed an intervening petition and answer herein asserting his rights to the funds which the defendant paid into the registry of the court. The Trustee denies that the plaintiff or Rogers obtained any valid rights, title, interest or lien against said funds as against the general creditors of the bankrupt; and asserts that there were no valid assignments of said funds and that defendant was only a disbursing agent for the bankrupt, without authority to allocate or make any agreement to allocate or encumber the funds in any particular way or to any particular creditor. The Trustee asserts that the materials for which the various creditors present claims were furnished to the bankrupt on open account, and not on a current basis for cash; and the Trustee claims the right to all of the funds paid into court by the defendant and says also that payments made to the plaintiff and other creditors within four months of bankruptcy, as set out in the intervening petition and the answer of the defendant, were preferential and recoverable for the benefit of general creditors. Arrangements and agreements claimed by the plaintiff and Rogers for priority are challenged on the grounds that they were made with knowledge of the bankrupt's insolvency and with the purpose of obtaining an illegal preference; and it is also claimed that the assignment of funds by the bankrupt to the defendant, to the extent of the 90 percent made available for the bankrupt's operating expense, was ineffectual and voidable as to general creditors because the bankrupt retained control of said funds.

Rogers filed an intervening petition and answer. It claims an indebtedness against Tullahoma Continuous Mix Company of $13,897.37 for crushed stone furnished as a necessary ingredient of the concrete which the Tullahoma Continuous Mix Company was producing.

It is insisted that the defendant is liable to it for this indebtedness because it misrepresented, either intentionally or innocently, that there would be ample funds assigned by the Tullahoma Continuous Mix Company to pay it in full; and defendant encouraged and induced Rogers to continue deliveries of materials with oral assurances of payment resulting in the present indebtedness. It claims priority in payment out of the funds paid into court by reason of orders from the Tullahoma Continuous Mix Company to the defendant to pay its invoices; and seeks a personal judgment against the defendant either for the full amount of its debt or for any deficiency as to the amount recoverable from the assigned funds.

The Tullahoma Continuous Mix Company (Mix Company) was a subcontractor on the government project, Arnold Engineering Development Center, near Tullahoma, Tennessee, on which Robert E. Maxey Construction Company (Maxey) and C. F. Rule Construction Company (Rule) were prime contractors.

Over a period commencing in December 1949 and for about one year, the plaintiff had sold cement to said Mix Company on open account, but in November 1950, due to an unfavorable credit experience, plaintiff declined to furnish it except upon terms of sight draft with bill of lading attached. Several carloads were sold on these terms in the early part of 1951.

On April 11, 1951, the Mix Company negotiated a loan with the defendant for $70,000 and as part security therefor executed to defendant assignments of the contracts which the Mix Company had with the prime contractors, Maxey and Rule. Pursuant to these assignments, all funds accruing to the Mix Company were paid direct to the defendant by the prime contractors. Under the assignments, the defendant was fully authorized to receive, receipt for, handle and disburse all of said funds; but contemporaneously therewith the defendant executed a collateral agreement to the effect that 10 percent

of said funds be placed on the loan account and the balance of said funds, or 90 percent, might, after 30 days, be available to the Mix Company for operating expense so long as the loan was not in default.

Under the assignments, as of April 11, 1951, all of the proceeds of the Maxey and Rule contracts were paid by them direct to the defendant.

Thereafter the 90 percent of the assigned funds were retained by the defendant and used, managed and disbursed by it for the payment of plaintiff's invoices for cement, as hereinafter shown, and for payment of other operating expenses of the Mix Company and payments on its loan account. This arrangement was in accordance with the directions and instructions of the Mix Company, and was, so far as appears, with the knowledge and consent of all creditors and the Maxey and Rule contractors. The contractors continued to pay the assigned funds direct to the defendant, and the Mix Company did not get possession or control of the 90 percent of the assigned funds or such part thereof as remained.

Early in May 1951, the Mix Company, finding it difficult or inconvenient to make C.O.D. purchases, and desiring to avoid shipments with sight draft with bill of lading attached, as required by plaintiff, requested and authorized the defendant to arrange with the plaintiff to ship cement to be paid for by defendant out of the assigned funds.

The defendant thereupon, on or about May 11, 1951, entered into an agreement with plaintiff whereunder the defendant or the Mix Company would from time to time order carload lots of cement to be shipped to the Mix Company, for which the defendant would pay out of the assigned funds. When each such car was thereafter ordered by the defendant or by the Mix Company, the defendant would send to the plaintiff a telegram of commitment, specifically obligating defendant to pay for the cement so ordered out of the assigned funds.

On May 11, 1951, the first car was so ordered by the defendant, and the defendant sent to the plaintiff the following telegram: "Re: Tullahoma Continuous Mix Company, Loan No. 2522. We agree to pay to Cumberland Portland Cement Company, Chattanooga, Tennessee the amount of their invoice covering shipment today of one carload of cement to Tullahoma Continuous Mix Company, Tullahoma, Tennessee out of funds to be received on invoices submitted by Tullahoma Continuous Mix to Robert E. Maxey Construction Company and/or C. F. Rule Construction Company covering deliveries already made under contracts assigned to us."

Under this arrangement, the plaintiff shipped a car of cement on that day, and thereafter shipped other cars when so ordered and upon receipt of a telegraphic commitment similar to that quoted above. Such sales were understood to be cash transactions and were based upon the confidence which the plaintiff had in the defendant as a governmental agency. Such an arrangement was agreed upon to avoid the inconvenience of making shipments with sight draft with bill of lading attached, as the plaintiff expressly declined to extend any credit to the Mix Company.

Thereafter, other creditors, particularly Rogers, negotiated with the defendant for payment of invoices for materials furnished to the Mix Company. Some of these invoices the defendant had paid from the proceeds of its loan. The defendant held out a promise of payment to Rogers when sufficient assigned funds should be received; and expressed to it and perhaps other creditors that the Mix Company would eventually meet its obligations in full.

On or about June 26, 1951, the defendant made a survey of the obligations of the Mix Company which had been filed with it for payment out of the assigned funds. It does not appear that the defendant had agreed to pay any of the other creditors in the same way as it had agreed with the plaintiff. In any event, the plaintiff knew of no other

commitments which the defendant had made thereabout.

As a result of the survey made by the defendant, it found that the assigned funds were not sufficient to meet the obligations that it had made to the plaintiff and also pay the invoices of certain other suppliers of the Mix Company who were making peremptory demands for payment. The defendant fearing that the creditors would undertake to stop the Mix Company's operations unless an arrangement was made, but realizing its obligations to plaintiff, thereupon communicated with plaintiff and outlined the situation and requested plaintiff to agree to a disbursement of the assigned funds on hand to the plaintiff and other creditors on an "equitable" basis. The plaintiff declined, and insisted on being paid in full in compliance with the agreement previously made and with the defendant's telegrams.

Upon defendant's representations that there was only a slight deficit in the amount of the assigned funds on hand, and that the funds in prospect from the assigned contracts would be ample to pay plaintiff in full; and if not ample, then defendant would obtain assignments of additional contracts which would meet any contingency, the plaintiff consented to the "equitable distribution" requested. This was the first information the plaintiff had that agreements had been made by defendant with the other creditors mentioned at this time. The plaintiff, relying on the representations made by telephone, wrote the defendant the following letter on June 26, 1951:

"It is understood by us that you have assured Estill Springs Sand & Gravel Company, Ralph Rogers Stone Company, and Crum Insurance Company that they are to be paid from funds received from contracts assigned to you by Tullahoma Continuous Mix. It is also understood that funds on hand and due from the contracts are at present a little less than the aggregate amounts owed to the three above suppliers and ourselves.

"It is agreeable with us for you to pay the above three suppliers and ourselves in an equitable manner.

"It is expected that future assurances will be covered by funds receivable from the assigned contracts."

On that day the total amount of assigned funds on hand with defendant was slightly over $10,000, while the claims in its hands were approximately, plaintiff—$15,047.97; Rogers—$7,573.39; insurance premiums—$3,224.31; Estill Springs Sand & Gravel Company—$3,000, or more; a total of approximately $28,845.67. The "equitable" distribution as made by defendant on June 28, 1951, gave to plaintiff $4,762.89; to Rogers, $3,687.61; to Estill Springs Sand & Gravel Company, $3,000; and to Crum Insurance Agency, $976.39. (A small amount of funds were received after June 26th.)

When the defendant asked the plaintiff to agree to a distribution of the funds on hand to others, the plaintiff inquired as to the amount on hand and the amount of the other debts, but defendant advised that the figures were not then available; but plaintiff was assured that the funds on hand lacked only a small amount of being sufficient to pay all the accrued indebtedness, and that ample funds would in due time come in to pay plaintiff in full.

Supplementary to the arrangement agreed on about May 11, 1951, whereby the defendant was to send its telegraphic commitment for each car of cement ordered, a representative of the plaintiff went to Nashville after the second or third such telegraphic commitment to talk personally with officials of the defendant, to ascertain whether this arrangement was to continue in the future, and whether the defendant definitely understood that it was to send a telegram of commitment only in case the assigned funds on hand or available were sufficient to meet the payment;

and plaintiff's representative was assured by the defendant that this was their understanding, and that the arrangement would be observed on that basis.

The case was reopened at the instance of the Trustee in bankruptcy for the presentation of proof as to the insolvency of the Mix Company. The proof was heard on the 20th day of April, 1953, at which time the Trustee and a certified public accountant testified. From this evidence it was made to appear that the Mix Company was insolvent on August 28, 1951, when the voluntary petition in bankruptcy was filed. While the books showed on their face a solvent condition theretofore, a close analysis and evidence outside the books' record disclosed that certain claimed assets were, in effect, fictitious and certain of the accounts receivable were not collectible; and on the whole it appeared likely that the Mix Company was actually insolvent from early in 1949, when it began operations.

It was not shown that either plaintiff or Rogers examined the books or knew the condition of Mix Company's affairs. The defendant claimed to have examined the situation when its loan of $70,000 was approved in April 1951, but the examiner, who made the report and recommended the loan, did not testify. The books reflected a status of solvency until shortly before the bankruptcy, if the assets and liabilities were taken at book value.

It was shown that the materials furnished by the plaintiff, by Rogers and by certain other creditors were necessary for the continued operation of the Mix Company; and that these suppliers were the only producers from whom it was practical for the Mix Company to obtain such materials.

The market for cement and crushed stone was particularly active at that time, and the plaintiff and Rogers had other outlets for all of their production, and they were not interested in doing business with Mix Company upon a purely commercial basis. The plaintiff

was willing to supply the Mix Company with materials if it could be assured of payment, but solely on the basis that Mix Company was engaged in construction work on a government project relating to the national defense. In order to supply the Mix Company the plaintiff found it necessary to defer deliveries to its regular customers.

The defendant indicated to plaintiff and to Rogers that it considered the Mix Company solvent, and that it would eventually succeed as a prosperous business. The defendant sincerely believed this to be true until the latter part of July 1951.

Under the allegations of the pleadings in the case and under the facts as hereinabove outlined, these questions are presented:

1. Is the defendant personally liable to the plaintiff for the balance of its indebtedness for cement supplied to the Mix Company, in the amount of $14,767.23?

2. If the defendant is not personally liable to the plaintiff, is the plaintiff entitled to recover of the Mix Company or its Trustee in bankruptcy a judgment for the amount of its debt, with priority as to $12,234.91, which the defendant has paid into the registry of the court as the balance of the Mix Company's assigned funds?

3. Is Rogers entitled to a judgment against the Mix Company, or its Trustee in bankruptcy, for $13,897.37; and to have priority to the whole or any part of the funds of $12,234.91 paid into court; and to judgment against the defendant for any deficit between the funds in court and the amount of the judgment against Mix Company?

4. Is the Trustee in bankruptcy entitled to the money paid into court, $12,234.91; and also to recover back from plaintiff and Rogers as preferences the sums paid to them on account within the period of four months of bankruptcy?

5. If the defendant is personally liable to the plaintiff under item No. 1, su-

pra, may the defendant apply to its liability the sum of money which it has paid into court, as being the balance of the assigned funds of the Mix Company?

■ The Court is of the opinion that the defendant personally is liable to the plaintiff under the facts disclosed. It ordered materials from the plaintiff and entered into a direct obligation to pay the purchase price without which commitment the plaintiff would not have furnished the material. The obligation was direct, positive and unequivocal. It was an incident of its servicing a loan made in regular course of business and under proper official authority. It is true, the obligation was to pay out of funds of the Mix Company which it represented had been assigned to it; but ample funds were available from this source. The defendant's obligation to pay, thus made, covered total shipments by plaintiff of some $26,656.86, while defendant had in its possession a total of $55,656.65 of assigned funds. It actually paid the plaintiff about $11,889.-63.

One of the defenses is that on June 26, 1951, the plaintiff, in a letter to defendant, agreed to an equitable distribution of the assigned funds on hand among several other creditors and thus relieved the defendant of the obligation of its telegrams. The proof discloses that the letter written by plaintiff on June 26, 1951, was induced by defendant's erroneous statement of the situation. Defendant, at that time, in a telephone conversation from Nashville, Tennessee, represented to plaintiff that other creditors of the Mix Company were demanding payment and threatening that they would close the Mix Company's operations if not paid. The defendant further represented that the money on hand in its possession lacked only a small amount of being sufficient to pay plaintiff's accrued debt and the other creditors; and that if the other creditors were permitted to share in the disbursement of the funds on hand, the defendant would soon receive additional funds from the assigned contracts to fully pay the plaintiff. Also that if funds to be received from the assigned contracts were insufficient, defendant would obtain assignment of additional contracts, which in any event would enable defendant to pay plaintiff in full.

It is shown, however, that the "small" deficit which the defendant represented to the plaintiff existed between the cash on hand and the bills payable that were due was a very substantial sum. The cash available turned out to be $12,426.-69, while the bills payable amount to about $28,845.67.

The plaintiff's letter of June 26, 1951, was thus obtained under a misapprehension of fact for which defendant was responsible.

Plaintiff's letter of June 26, 1951 was not intended, however, to affect the plaintiff's contract with the defendant except for the temporary disbursement of the funds then on hand with defendant; and the only purpose was to permit a temporary diversion of a small amount of cash funds to other creditors to enable the Mix Company to continue operations.

The plaintiff was not asked to waive the obligations contained in defendant's telegrams; and it did not do so, but expressly and definitely relied thereon. The defendant obviously understood this to be true, as it continued thereafter to send the plaintiff a telegraphic commitment for each subsequent car of cement ordered.

■ The Court is of the opinion and so finds that defendant's letter of June 26, 1951 had no effect to release or modify the obligations of the defendant to pay the plaintiff as it had agreed.

As heretofore said, the plaintiff not only required a telegraphic commitment from the defendant for each car that was ordered, but after two or three cars had been shipped under this procedure, a representative of the plaintiff went to the office of the defendant in Nashville for a personal conference. And on that occasion the defendant confirmed its un-

derstanding that it was to be responsible for paying the plaintiff, and that it (the defendant) would not send a telegram of commitment in any case except where it had the funds on hand or available for payment of the invoice.

The defendant, R.F.C., undoubtedly construed its telegrams to, and oral discussions with, plaintiff as constituting an obligation on its part to pay plaintiff for the cement furnished. For when defendant became apprehensive that the available funds might not be sufficient to pay plaintiff and also pay other creditors whose claims were filed with it, defendant called upon plaintiff to *obtain its consent* to an "equitable distribution" of the funds on hand.

Why seek the consent of the plaintiff except on the idea that the plaintiff had acquired rights in the funds with which a division of the funds to other creditors would interfere?

Defendant did not consider it necessary to obtain the consent of any one else. It did not request consent from Rogers, nor from Mix, nor from any other creditor. Its request of plaintiff resulted in plaintiff's letter of consent of June 26th. This letter, as set out above, was obtained through an absence of frankness, and through a misstatement of the financial situation concerning the assigned funds.

But this letter of June 26th would not, for another reason, relieve defendant from its liability to plaintiff.

The total amount of cement furnished by the plaintiff after May 11, 1951, which was covered by the defendant's obligations, amounted approximately to $26,000.

The total amount of assigned funds which came into the defendant's possession was $55,000.

The amount of funds diverted to other creditors, pursuant to the plaintiff's letter of June 26th, was $7,664 (Rogers— $3,687.61; Estill Springs—$3,000; Crum Insurance—$976.39). The amount of assigned funds in its hands less the diversions to other creditors pursuant to the letter of June 26th, thus amounted to $55,000, less $7,664, or $47,336.

The sum of $47,336 from the assigned contracts was, in any event, available to the defendant to meet the obligations of $26,000, which it had incurred to plaintiff.

Mr. Phillips, the R.F.C. examiner, to whom the Mix Company's loan was assigned for handling testified that on July 13, 1951, R.F.C. had every reason to believe that the Mix Company would be successful (Transcript p. 165).

This lackadaisical attitude of the defendant is what apparently created the situation which resulted in this litigation. That the defendant could, in the face of its telegrams to plaintiff, disavow any obligations thereunder, indicates a strange indifference to contract obligations. These contracts by telegram were executed by the defendant and accepted in good faith by the plaintiff and the plaintiff having ample funds assigned to it to meet the terms in the telegrams must be held to its obligations.

If the obligations of the defendant are to pay the debt of another, then they are enforceable under the statute of frauds, as being in writing and signed by the party to be charged. Ulhorn v. Cohen Grocery Co., 3 Tenn.App. 400.

██ Also the obligations of the defendant, made at the request and upon the authority of the Mix Company, to pay from a definite fixed fund the price of materials not otherwise obtainable establishes an equitable lien upon such funds. Equitable liens are well recognized and are favored as a means to establish the right to justice. 53 C.J.S., Liens, § 4, p. 836; 4A, Remington, section 1725; Ingersoll v. Coram, 211 U.S. 335, 336, 368, 29 S.Ct. 92, 53 L.Ed. 208; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; Johnson v. Root Mfg. Co., 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934; Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; Hurley v. Atchison, T. & S. F. R. Co., 213 U.S. 126, 134, 29 S.Ct. 466, 53 L.Ed. 729; Hunt v. Curry, 153 Tenn. 11, 282 S.W.

201; Milam v. Milam, 138 Tenn. 686, 200 S.W. 826; State ex rel. McCormack v. American Building & Loan Ass'n, 177 Tenn. 385, 150 S.W.2d 1048; Shipley v. Metropolitan Life Ins. Co., 25 Tenn.App. 452, 158 S.W.2d 739.

In Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530, the court said: "An obligation to pay, but definitely limited to payment out of the fund, creates a lien. There should be but one rule in this respect and that is the one suggested by plain good sense."

The question of equitable liens as affected by the bankruptcy statute will be discussed later herein.

The assignment of these funds to the defendant by the Mix Company for the express purpose of paying plaintiff for supplies furnished would, under generally accepted authority, impose a trust on said funds which would be enforceable. The express purpose was reflected by the terms of the telegrams. 65 C.J., page 295, section 69(d); 89 C.J. S., Trusts, § 55; Shipley v. Metropolitan Life Ins. Co., supra; McKee v. Lamon, 159 U.S. 317, 16 S.Ct. 11, 40 L.Ed. 165; City of Miami v. First Nat. Bank of St. Petersburg, 5 Cir., 58 F.2d 561.

If it be considered that the defendant was the agent of the Mix Company to disburse its funds and to order and pay for its materials, then the agreement in the form as drawn would constitute the personal obligation of the defendant, even though the defendant's principal was disclosed. If the contract contains apt words to bind the agent personally, he may, of course, be held liable directly on the contract. 2 C.J., page 807, section 479; 3 C.J.S., Agency, § 215(c), p. 122; United States Shipping Board Merchant Fleet Corp. v. Harwood, 281 U.S. 519, 524, 50 S.Ct. 372, 74 L. Ed. 1011; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 66 L.Ed. 762; Feldman v. American Palestine Line, 2 Cir., 18 F.2d 749; Steele v. McElroy, 33 Tenn. 341; East Tennessee Iron Mfg. Co. v. Gaskell, 70 Tenn. 742.

The personal liability of the agent is particularly appropriate where, as here, the third party gave credit expressly and exclusively to the agent. Siler v. Perkins, 126 Tenn. 380, 149 S.W. 1060, 47 L.R.A.,N.S., 232.

The liability of the agent in such cases is predicated, not upon his agency, but upon his contract obligations. 3 C.J.S., Agency, § 215, p. 122.

Within the framework of any one of the foregoing principles, the plaintiff would be entitled to a personal judgment against the defendant for the full amount of its indebtedness, unless, as urged by the defendant, it is not so liable by virtue of being an instrumentality of the United States. This defense, under the present circumstances, appears to be without merit. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 394, 59 S.Ct. 516, 83 L.Ed. 784; Reconstruction Finance Corp. v. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; Federal Housing Administration Region No. 4 v. Burr, 309 U.S. 242, 250, 60 S.Ct. 488, 84 L.Ed. 724; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 66 L.Ed. 762.

There remains for consideration the intervening petitions of Rogers and J. Davis Wooten, Trustee in bankruptcy.

Rogers seeks a recovery of its debt to be paid out of the funds which the defendant has paid into the registry of the court, basing its claim on its indebtedness against the Mix Company, which it says the Mix Company ordered to be paid and the defendant agreed should be paid out of said funds.

At the outset of operations by Mix Company, Rogers supplied Mix Company with materials on open account. Credit experience was bad, and the open account deliveries were suspended. While Mix Company was negotiating with defendant for a loan, the defendant inquired of Rogers whether, if its debt was paid out of the loan, it would resume deliveries to Mix Company; and Rogers agreed that it would. This was obviously to be on open account basis

upon completion of the loan. Rogers' account was paid in full. Deliveries of materials were then resumed on a 30 day basis and at the end of the first 30 day period were again interrupted by failure of the Mix Company to pay.

Negotiations were then carried on between Rogers, Mix Company and the defendant. Mix Company gave orders for payment out of the assigned funds in the hands of defendant. These orders accumulated, but were not paid. The defendant advised Rogers that funds would in due time be available and the orders accepted and paid; and Rogers continued to supply materials relying on these representations of the defendant.

During these negotiations the defendant was acting in good faith and honestly believed the Mix Company would survive and that all of its debts would be paid. The defendant was itself mistaken and placed an unjustified reliance upon the reports made by Mix Company. It was unfortunate that the defendant did not check more closely into the Mix Company's operation and ascertain the true situation; and it was unfortunate that Rogers relied on the advice and representation of the defendant. While Rogers was perhaps justified in thinking the defendant would find enough funds of Mix Company to pay all the creditors, including Rogers, it nevertheless understood that defendant was only expressing its opinion and was not making any commitment thereabout. Rogers neither requested nor obtained any written obligation from defendant, and obtained nothing from Mix Company that would amount to an assignment or lien on the funds in the defendant's hands, which would be equal to or superior to the rights of plaintiff. It continued deliveries of materials after being advised of the commitments made by defendant to plaintiff with respect to the assigned funds. The claim of Rogers cannot, therefore, be given any priority against the Mix Company's funds in the hands of the defendant, superior or equal to the rights of plaintiff.

The intervening petition of Rogers does claim that its later deliveries to Mix Company were the result of misrepresentations by the defendant, either innocently or intentionally made; and that the defendant should be personally liable to Rogers for any funds which Rogers cannot collect from Mix Company. The proof is not sufficient to sustain this claim.

The proof indicates that the defendant believed that, until the latter part of July, the Mix Company would be able to pay its creditors in full; and defendant so advised Rogers. It was in reliance on this information that Rogers continued deliveries. But this did not amount to a fraudulent misrepresentation which would be actionable. It was only the expression of an expectation or hope, without any promise or agreement by the defendant. There is no evidence that Rogers made any investigation of the Mix Company's affairs, especially as to its prospective earnings. Rogers' reliance on the defendant's optimism is unfortunate but is not grounds for legal liability.

It is generally held that a fraudulent intent or the equivalent thereof is an essential element of fraud although such intent may be established by circumstances. 37 C.J.S., Fraud, § 22, p. 259; Fidelity & Deposit Co. of Maryland v. Drovers' State Bank, 8 Cir., 15 F. 2d 306; Kuhn v. Chesapeake & O. R. Co., 4 Cir., 118 F.2d 400; Miller v. United States, 10 Cir., 120 F.2d 968; O'Connor v. Ludlam, 2 Cir., 92 F.2d 50; Shwab v. Walters, 147 Tenn. 638, 251 S.W. 42.

A party relying upon fraud in law action must show that misrepresentations asserted were made with knowledge of their untruth, or in reckless disregard of truth. Lockwood v. Christakos, 86 U.S.App.D.C. 323, 181 F. 2d 805; McNabb v. Thomas, 88 U.S. App.D.C. 379, 190 F.2d 608.

To sustain an action of deceit, there must be proof of fraud, and fraud is proven when it is shown that a false representation has been made knowingly,

or without belief in its truth, or recklessly; careless whether it be true or false. Shwab v. Walters, supra; Shell Oil Co. v. State Tire & Oil Co., 6 Cir., 126 F.2d 971.

■ Constructive fraud generally arises where there is a fiduciary or confidential relationship. 37 C.J.S., Fraud, § 2, p. 213.

■ Furthermore actionable misrepresentations must be as to a past or present fact, and may not consist of unfulfilled predications or expectations as to future events. 37 C.J.S., Fraud, § 11, p. 231, et seq.,

The failure to meet the requirements of the statute of frauds, Williams Code of Tennessee, sections 7197 and 7831, would result in the immunity of defendant from a personal judgment in favor of Rogers. And counsel for Rogers, in a letter to defendant, dated August 2, 1951 (defendant's Exhibit 3), disclaims any right to a judgment against defendant.

The intervention of the Trustee in bankruptcy seeks a recovery for the bankrupt estate of the funds paid by the defendant into the registry of the court, and also seeks to recover from plaintiff and Rogers the funds paid to them by defendant out of the bankrupt's funds within 4 months of the bankruptcy. This claim is based upon the ground that the assignments made by the bankrupt of the Maxey and Rule accounts were invalid or at least voidable; and is preferential because when made the bankrupt was insolvent, and the assignor retained control of the funds. A recovery of the amounts already distributed to the plaintiff and to Rogers within 4 months of bankruptcy is sought on the ground that when made the Mix Company was insolvent and the money paid to these creditors within 4 months created a voidable preference.

The intervening petition of the Trustee is without any sound basis. The petition is grounded principally on the claim of insolvency, or that the plaintiff and Rogers had grounds to believe the debtor insolvent; and the further claim that the debtor retained possession and control of the assigned funds which rendered the assignment voidable.

The Trustee relies strongly on Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, which was based solely upon the local laws of the State of New York. It is, therefore, not controlling.

■ The Court finds no evidence that either plaintiff or Rogers knew that the Mix Company was insolvent or had reasonable grounds to believe it insolvent.

■ They undoubtedly knew it was slow pay and not a desirable credit risk. But that is not sufficient; nor is suspicion of insolvency alone enough to create a preference. Stucky v. Masonic Sav. Bank, 108 U.S. 74, 2 S.Ct. 219, 27 L.Ed. 640; Grant v. National Bank, 97 U.S. 80, 24 L.Ed. 971.

■ Mere inability to make payments on demand, if the debtor is at the same time continuing the business, does not constitute in itself "reasonable cause to believe". Miceli v. Morgano, D.C., 36 F.2d 507, 509. Cf. J. W. Butler Paper Co. v. Goembel, 7 Cir., 143 F. 295; Brookheim v. Greenbaum, D.C., 225 F. 635; Everett v. Warfield Mining Co., 4 Cir., 37 F.2d 328; In re Venie, D.C., 80 F.Supp. 247; Chorost v. Grand Rapids Factory Showrooms, D.C., 77 F.Supp. 276; Watson v. Adams, 6 Cir., 242 F. 441; Baxter v. Ord, 6 Cir., 239 F. 503.

These creditors did not examine the books or any financial statements of the Mix Company, and had no intimate knowledge of its affairs. The fact that it had been awarded a large subcontract on an important government project gave it at least the outward semblance of a sound responsible business.

It was currently known that Mix Company had negotiated a $70,000 loan with defendant, which naturally gave color to its good standing. It could not be assumed that a government agency, such as defendant, would extend such credit to a failing insolvent operation.

■ Furthermore, the payments made to plaintiff, as well as those prom-

ised to be paid out of the funds now in the registry of this court, were made for a present, valuable consideration, without diminution of the bankrupt estate.

The agreements by the defendant to pay plaintiff for the cement were contracts for present payment in cash, and no time or terms were proposed or considered. Uniform Sales Act, section 7235, Tenn.Code. The fact that defendant assumed for its convenience to take a few days to forward remittance did not change its legal effect. Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for possession of the goods. Williams Code of Tenn., section 7235; Neilson & Kittle Canning Co. v. F. G. Lowe & Co., 149 Tenn. 561, 260 S.W. 142; Ulhorn v. Cohen Grocery Co., 3 Tenn.App. 400, 409.

And the arrangement made by the bankrupt to assign the funds to defendant for the very purpose of obtaining cement as a present consideration amounted to both a legal and equitable assignment of the funds for that purpose. The funds were placed in possession of the assignee.

The assignment of the funds to defendant with notice to the debtors such as, here appears, make the assignments effective under the laws of Tennessee, and the funds were then not subject to the claims of the Mix Company's attaching creditors. Clodfelter v. Cox, 33 Tenn. 330; McLin & Henry v. Wheeler, 37 Tenn. 687; Dillingham v. Traders' Ins. Co., 120 Tenn. 302, 108 S.W. 1148, 16 L.R.A.,N.S., 220; DeSoto Hardwood Flooring Co. v. Old Dominion Table & Cabinet Works, 163 Tenn. 532, 43 S.W. 2d 1069; Willis v. Mann Const. Co., 145 Tenn. 318, 236 S.W. 282; Peters v. Goetz, 136 Tenn. 257, 260, 188 S.W. 1144; Naill & Naill v. Blackwell, 164 Tenn. 615, 51 S.W.2d 835; 5 Corpus Juris, 897, section 61; 6 C.J.S., Assignments, § 41.

Under such circumstances, the rights of the Trustee in bankruptcy would be subject to the rights of the assignee.

In any event, the assignment of the funds by the Mix Company would amount to an equitable assignment. Generally speaking, an equitable assignment requires no special form for its creation; any language or act which makes an appropriation of the funds amounts to an equitable assignment. 4A, Remington, section 1724, page 289; In re Bresnan, D.C., 45 F.2d 193; In re Oliver, D.C., 132 F. 588.

The assignment of these funds by Mix Company to defendant, whether written or oral, for the purpose of obtaining raw materials for operations undoubtedly created an equitable lien in favor of the suppliers of the materials. Voltz v. Treadway & Marlatt, 6 Cir., 59 F.2d 643; In re Goodhue Motor Co., D.C., 28 F.2d 402; Goodnough Mercantile & Stock Co. v. Galloway, D.C., 156 F. 504; Union Trust Co. v. Bulkeley, 6 Cir., 150 F. 510; Jackson Bros. v. Harpeth National Bank, 12 Tenn.App. 464; Spencer v. Hiram Walker & Sons Grain Corporation, 6 Cir., 112 F.2d 221.

At the time the defendant granted the loan to the Mix Company the latter executed to the defendant complete, definite and absolute assignment of the contracts, or the proceeds of the contracts which Mix Company had with Maxey and Rule. This was more than 4 months before bankruptcy.

At the same time the defendant gave to the Mix Company what was called a collateral agreement, whereunder it was provided that the Mix Company might, after 30 days and so long as its loan was not in default, have the benefit of 90 percent of the assigned funds to use for operating capital.

As a matter of fact the 90 percent of these funds were never made available to the Mix Company and it never exercised any control over them. The contract debtors, Maxey and Rule, continued throughout the transactions to make remittances to the defendant pursuant to

the assignments; and the defendant retained, used and disbursed the funds. It is true that the Mix Company from time to time wrote letters of authorization to the defendant in which the defendant was authorized to pay certain creditors of the Mix Company; but these letters of authorization were held by the defendant and in most cases never honored. Although there were funds available.

The evidence fails to show that the assignor, the Mix Company, retained control of the 90 percent proceeds of the assigned funds. It did not undertake to withdraw or use the funds; and many of its orders for disbursement in favor of Rogers and other creditors were not honored or given effect.

The Trustee in bankruptcy relies on the amendment of the Bankruptcy Act of 1950, section 60, subs. a, b, 11 U.S. C.A. § 96, subs. a, b, as denying the right to rely on an equitable lien.

The first sentence of subdivision (6) reads: "The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section."

The legislative history of the amendment as found in U. S. Congressional Service 1950, 2nd Session, 81st Congress, pages 1985, 1989, shows the purpose of subdivision 6 to be, "to make it certain that the amendment will not validate, in the hands of a secured creditor, equitable liens where available means of perfecting legal liens have not been employed by him."

While this explanation is not particularly clarifying, it must be borne in mind in the present case, there was no occasion to employ any means of "perfecting legal liens", for the reason that the transactions involving the assignment by the Mix Company and the payment for raw materials by the defendant was on a cash basis, which normally would require no "legal lien".

It is to be observed that the foregoing amendment to the bankruptcy act did not indicate disapproval of all equitable liens. See Danais v. M. De Matteo Const. Co., D.C., 102 F.Supp. 874.

It will be noted that the legislative history of the 1950 amendment, as referred to supra, at pages 1988 and 1989, explains that the purpose of subdivisions 7 and 8 of the amendment was to "provide that no transfer made in good faith, for a new present consideration, shall constitute a preference to the extent of such consideration actually advanced, if the provisions of applicable State law governing the perfection of such transfer are complied with, with an appropriately rigid time limitation (21 days) for such perfection if such limitation is not itself prescribed by the applicable State law."

Subdivision 8 of the amendment, Bankruptcy Act, § 60, sub. a(8), which seems applicable to the present case reads as follows: "If no such requirement of applicable law specified in paragraph (7) exists, a transfer wholly or in part, for or on account of a new and contemporaneous consideration shall, to the extent of such consideration and interest thereon and the other obligations of the transfer or connected therewith, be deemed to be made or suffered at the time of the transfer. A transfer to secure a future loan, if such a loan is actually made, or a transfer which becomes security for a future loan, shall have the same effect as a transfer for or on account of a new and contemporaneous consideration."

The effect of these provisions of the amendment are to relieve the transfer of funds here involved from any taint of "preferences", as they were transfers made in good faith and for a new and present consideration *and in compliance with state law.* 4A, Remington, 1952 Supplement, page 16, section 1656.

It may also be observed that assignments within 4 months for present security are not preferential. Associated Seed Growers v. Geib, 4 Cir., 125 F. 2d 683; Doggett v. Chelsea Trust Co., 1

Cir., 73 F.2d 614; McCluer v. Heim-Overly Realty Co., 8 Cir., 71 F.2d 100.

■ The funds in the hands of the defendant (which were paid into the registry of the court) were impressed with a trust or equitable lien in favor of the plaintiff as set out above. These rights are superior to the rights of the Trustee in bankruptcy; and are thus protected in the hands of defendant for payment of plaintiff's indebtedness. Johnson v. Root Mfg. Co., supra; Walker v. Brown, supra; Walton Land & Timber Co. v. Runyan, 5 Cir., 269 F. 128; In re Cramond, 145 F: 966.

■ Assignments to enable a debtor to continue in business are valid. In re Grocers' Baking Co., D.C., 266 F. 900, affirmed 5 Cir., 277 F. 1015; Hurley v. Atchison, T. & S. F. R., supra; Greey v. Dockendorff, 231 U.S. 513, 34 S.Ct. 166, 58 L.Ed. 339.

■ Payments for present consideration are not preferential. In re Mosher, D.C., 224 F. 739; Lake View State Bank v. Jones, 7 Cir., 242 F. 821; In re Bernard & Katz, 2 Cir., 38 F.2d 40; Adams v. City Bank & Trust Co. of Macon, Ga., 5 Cir., 115 F.2d 453, 134 A.L.R. 1215; Sullivan v. Myer, 137 Tenn. 412, 193 S.W. 124.

■ Payments are not preferential where they do not diminish the estate. National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 184, 32 S.Ct. 633, 56 L.Ed. 1042; Bailey v. Baker Ice Machine Co., 239 U.S. 268, 274, 36 S.Ct. 50, 60 L.Ed. 275; New York County Nat. Bank v. Massey, 192 U.S. 138, 147, 24 S.Ct. 199, 48 L.Ed. 380; Adams v. City Bank & Trust Co., supra; Spencer v. Hiram Walker & Sons Grain Corporation, supra; In re Kerlin, 6 Cir., 209 F. 42.

For the reasons stated above, the Trustee in bankruptcy is not entitled to recover from plaintiff and Rogers the payments heretofore made to them, nor is he entitled to take the funds which the defendant has paid into the registry of the court. His intervening petition will, therefore, be dismissed.

The plaintiff will have judgment against the defendant for $14,767.23. As the funds paid into the registry of the court, amounting to $12,234.91, are impressed with a trust or equitable lien in favor of plaintiff, created by the Mix Company and made effective by action of defendant, said funds shall be applied on the plaintiff's judgment against the defendant.

There is no legal basis for a personal judgment against the defendant in favor of Rogers.

This will constitute a findings of fact and conclusions of law.

Order accordingly.